Kelly Paul Peters
Scoolidge Peters Russotti & Fox LLP
2 Park Avenue, 20th Floor
New York, NY 10016
Tel: 212-729-7708
kelly@sprfllp.com
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **WISS JOSEPH**; and **MARIE JOSEPH**,<br><br>      Plaintiffs,<br><br> ~ *versus* ~<br><br>**DENER CEIDE**;<br>**DENER CEIDE PRODUCTIONS, INC.**;<br>"**ZAFEM**";<br>**ZAFEMUSIC.COM**; and<br>**ZAFEMEPK.COM**,<br><br>      Defendants. | Case No.  **1:24-cv-6572** |

**DEFENDANTS' MEMORANDUM OF LAW**
**IN SUPPORT OF THEIR MOTION**
**TO SET ASIDE DEFAULT JUDGMENT**

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ................................................................................................ 1

II. FACTS ........................................................................................................................................ 2

III. PROCEDURAL HISTORY ...................................................................................................... 5

IV. LEGAL STANDARD ............................................................................................................... 5

V. ARGUMENT .............................................................................................................................. 6

    a. Defendants' Default Was Inadvertent and Non-Willful. ...................................................... 6

    b. Defendants Have Several Meritorious Defenses. ................................................................ 7

        1. Defendants Have Established a Meritorious Defense Based on Prior Use of the name *Zafem*. ............................................................................................................................... 7

        2. Defendants' Band Name *Zafem* Will Not Likely Cause Confusion with Plaintiffs' Trademark Registration of "Zafem World Entertainment". .................................................. 9

        3. Plaintiffs' Procured Its Trademark Registration of "Zafem World Entertainment" in Bad Faith. ..................................................................................................................................... 12

    c. Plaintiffs Would Not Be Prejudiced by Setting Aside the Default. .................................... 14

    d. The Judgment Amount Should Be Set Aside Because Defendants' Use of the Band Name *Zafem* Was Not a Willful Infringement of Defendants' Alleged Mark. ............................... 15

VI. CONCLUSION ....................................................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**

Am. All. Ins. Co., Ltd. v Eagle Ins. Co., 92 F.3d 57 (2d Cir. 1996) ........................................... 5, 15

Belizaire v RAV Investigative and Sec. Services, Ltd., 310 FRD 100 (S.D.N.Y. 2015) ............... 5

Davis v. Musler, 713 F.2d 907 (2d Cir. 1983) ............................................................................. 14

Dial-A-Mattress Operating Corp. v. Mattress Madness, Inc., 841 F. Supp. 1339 (E.D.N.Y. 1994) ................................................................................................................................................... 8

Enron Oil Corp. v Diakuhara, 10 F.3d 90 (2d Cir. 1993) ................................................... 6, 7, 14

Gruner + Jahr USA Pub., a Div. of Gruner + Jahr Print. and Pub. Co. v Meredith Corp., 991 F.2d 1072 (2d Cir. 1993) ..................................................................................................................... 10

Jackpocket, Inc. v Lottomatrix NY LLC, 645 F. Supp. 3d 185 (S.D.N.Y. 2022), aff'd, 23-12-CV, 2024 WL 1152520 (2d Cir. Mar. 18, 2024) .................................................................................. 7

Johnson v New York Univ., 324 F.R.D. 65 (S.D.N.Y. 2018), aff'd, 800 F. App'x 18 (2d Cir. 2020) ............................................................................................................................................. 6

New York v Green, 420 F.3d 99 (2d Cir. 2005) ......................................................................... 5, 6

Polaroid Corp. v Polarad Elecs. Corp., 287 F.2d 492 (2d Cir. 1961) ......................................... 10

Powerserve Intern., Inc. v Lavi, 239 F.3d 508 (2d Cir. 2001) ....................................................... 6

S.E.C. v. McNulty, 137 F.3d 732 (2d Cir. 1998) ........................................................................... 6

Star Indus., Inc. v. Bacardi & Co., 412 F.3d 373 (2d Cir. 2005) ................................................ 13

State St. Bank and Tr. Co. v Inversiones Errazuriz Limitada, 374 F.3d 158 (2d Cir. 2004) .......... 6

Streetwise Maps, Inc. v. Vandam, Inc., 159 F.3d 739 (2d Cir. 1998) ................................... 11, 13

Turn On Prods., Inc. v Almost Famous Apparel, LLC, 18CV00625ILGRER, 2019 WL 2436297 (E.D.N.Y. Apr. 12, 2019) ............................................................................................................ 15

**Statutes**

15 U.S.C. § 1117(a) ..................................................................................................................... 16

15 U.S.C. § 1117(c) ..................................................................................................................... 15

15 U.S.C.A. § 1051(a)(3)(D) ....................................................................................................... 13

15 U.S.C.A. § 1127 ........................................................................................................................ 9

Fed. R. Civ. P. 55(c) ...................................................................................................................... 5

Fed. R. Civ. P. 60(b) ...................................................................................................................... 5

I.     **PRELIMINARY STATEMENT**

Defendants Dener Ceide ("Ceide") and Dener Ceide Productions, Inc. ("Productions", and together with Ceide as the "Defendants"), by and through their undersigned counsel at the law firm of Scoolidge Peters Russotti & Fox LLP, respectfully submit this Memorandum of Law in support of their motion pursuant to Federal Rules of Civil Procedure 55 and 60(b) for an order vacating the default judgment entered against them in this action. *See* ECF No. 29 (the "Default Judgment").

Plaintiffs Wiss Joseph and Marie Joseph (together as "Plaintiffs") commenced this action seeking damages under the theory that Defendants infringed on their trademark for "Zafem World Entertainment", which was registered by Plaintiffs on January 5, 2021. Notably absent from Plaintiffs' complaint and motion for default judgment is the fact that, as of January 2021, *Zafem* was already a famous band led by Dener Ceide, which was producing music, performing, and touring all over the world.

The Default Judgment was entered without Defendants' appearance due to excusable neglect and misunderstanding of the legal process—not willful disregard of these proceedings. Defendant Dener Ceide is the founder, creative director, and performing artist behind the internationally recognized Haitian musical group known as *Zafem*, which has achieved broad popularity and acclaim throughout the Haitian community, including the receipt of Kompa band of the year at the 2024 Caribbean Music Awards. Plaintiffs' claims rest upon a trademark registration obtained long after Mr. Ceide's band had been performing and using the *Zafem* name in commerce and in public recognition.

Defendants now seek to vacate the default judgment so that the matter may be decided on the merits. Good cause exists under Rules 55(b) and 60(b)(1) and (3), as the default resulted from mistake, inadvertence, and excusable neglect, and because the judgment was procured through misrepresentations regarding Plaintiffs' priority and ownership of the *Zafem* mark. Defendants also have a meritorious defense based on prior and continuous use of the name *Zafem*, absence of likelihood of confusion, and Plaintiffs' bad-faith attempt to appropriate a band name already famous in the Haitian music community.

Furthermore, granting this motion will serve the strong federal policy favoring resolution of cases on their merits and will prevent a manifest injustice by allowing the true originator of the *Zafem* name to be heard.

## II. FACTS[1]

Defendant Dener Ceide is a renowned Haitian musician, songwriter, and performer with more than twenty-five years of professional experience. He is the founder of the Haitian musical group known as *Zafem* and the sole owner of Dener Ceide Productions, Inc. Mr. Ceide is widely recognized within the Haitian music industry, maintaining more than 88,000 followers on Instagram, 121,000 followers on Facebook, and over 228,000 subscribers on YouTube. His music has been downloaded and streamed millions of times worldwide.

From 2008 to 2013, Mr. Ceide was the lead guitarist and singer for the famous Haitian group called *Tabou Combo*, which had a hit song titled "Kite m fè Zafem," which translates from Haitian Creole to "Let me do my thing." Inspired by this song, in 2016, Mr. Ceide founded the band *Zafem*, dedicated to writing and performing Haitian "Kompa" music—a vibrant genre celebrating Haitian culture, art, and rhythm. The term "Zafem," a Haitian-Creole expression

---

[1] The facts referenced herein are set forth in the Affidavit of Dener Ceide, dated October 27, 2025, and which is being submitted herewith.

2

meaning "my business," "my thing," or "my deal," is a commonly used colloquial phrase in Haitian culture. Beginning in 2016, Mr. Ceide began writing and producing original works under the *Zafem* name. By 2017, Zafem publicly released its first musical projects, and in October 2019, released the band's first official music video teaser for the song *Savalou*, followed by its full video on October 17, 2019, which has since received tens of thousands of likes and comments.

Since its inception, *Zafem* has achieved widespread acclaim. The group has released two albums that have collectively reached millions of listeners across the globe, and it has performed more than 150 shows internationally, including throughout the United States, Canada, Europe, South America, and the Caribbean. In 2023, *Zafem* became the most-streamed musical group in Haiti and remains one of the most internationally recognized Haitian bands. That same year, Zafem was featured on *Cokarella*, a digital platform devoted to Haitian art and culture, and was ranked on Billboard Magazine's "Top 25," listed as the highest-streamed Haitian band of the year. In 2024, the group received the Caribbean Music Award for Kompa Band of the Year at the ceremony held in Brooklyn, New York.

Mr. Ceide has never met the Plaintiffs Wiss Joseph and Marie Joseph, and therefore has no personal or professional relationship with them nor any knowledge of their musical activities. Given his prominence in the Haitian music scene, however, it would have been implausible for Plaintiffs—supposedly also Haitian musicians—to be unaware of him or of the band *Zafem* when they sought to register the "Zafem World Entertainment" mark in 2019. Plaintiffs allege that they obtained a U.S. trademark registration for the word "Zafem World Entertainment" on January 5, 2021, but, upon information and belief, that registration was made in bad faith and with knowledge of Mr. Ceide's longstanding and public use of the name. Plaintiffs failed to disclose to the U.S.

3

Patent and Trademark Office that *Zafem* was already an established and active musical group under Mr. Ceide's leadership, thereby making false or misleading representations in their application.

Mr. Ceide does not recall being served with the summons and complaint in this action, either addressed to him or to his company. Nor does he recall any other contact from or on behalf of Plaintiffs until Plaintiffs' counsel emailed him *after* entry of the Default Judgment. He states that, if he did receive one or both copies of the summons and complaint, he either did not read them or did not understand them.

As a touring musician with no manager, who spends approximately eighty percent of the year on the road, Mr. Ceide states that he is rarely at his New Jersey residence and struggles to manage the large volumes of fan correspondence, solicitations, and unsolicited packages.

Mr. Ceide's failure to respond to the summons was unintentional. When Mr. Ceide was finally contacted by Plaintiffs' counsel (tellingly, only *after* entry of the Default Judgment), he acted promptly to retain counsel to prepare this motion. His failure to appear earlier resulted from mistake and excusable neglect, not from any intent to ignore or delay the proceedings.

Mr. Ceide has clear and meritorious defenses to Plaintiffs' claims. His use of the name *Zafem* predates Plaintiffs' registration by several years and has generated significant goodwill and recognition internationally. Plaintiffs' trademark filing seeks to misappropriate that goodwill and unjustly claim ownership of a name that Mr. Ceide created, popularized, and made synonymous with Haitian music excellence.

Allowing the default to stand would impose substantial injustice and deprive Defendants of a fair opportunity to present the true history and facts of *Zafem's* creation, success, and public identity. Setting aside the default judgment will enable this dispute to be resolved on its merits, consistent with the principles of fairness and equity that govern federal practice.

### III.     PROCEDURAL HISTORY

This action was commenced by summons and complaint dated September 19, 2024. *See* ECF 1. According to the docket history of this case, Plaintiffs had difficulty effecting service of process, and as a result, requested and were granted multiple extensions to effect service of process.

On May 5, 2025, the Clerk entered a default against Defendants for having failed to appear or otherwise defend the case. *See* ECF 21-22.

On September 18, 2025, the Court entered a decision and order granting Plaintiffs' motion for default judgment, finding that Defendants had willfully violated Plaintiffs' "Zafem World Entertainment" mark (*see* ECF 28); and further entered the Default Judgment against Defendants in the sum of $1,000,000. *See* ECF 29.

Defendants are now seeking a decision and order of the Court that sets aside the Default Judgment.

### IV.     LEGAL STANDARD

A Court may set aside an entry of default for good cause under Fed. R. Civ. P. 55(c); and may relieve a party from a final judgment pursuant to Fed. R. Civ. P. 60(b), on account of "mistake, inadvertence, surprise, or excusable neglect." Belizaire v RAV Investigative and Sec. Services, Ltd., 310 FRD 100, 104 (S.D.N.Y. 2015). In such motion under Rule 60(b), the Court is guided by three principal factors: (1) whether the default was willful, (2) whether the defendant demonstrates the existence of a meritorious defense, and (3) whether, and to what extent, vacating the default will cause the nondefaulting party prejudice." New York v Green, 420 F.3d 99, 108 (2d Cir. 2005). *See also* Am. All. Ins. Co., Ltd. v Eagle Ins. Co., 92 F.3d 57, 59 (2d Cir. 1996).

Further, "[a] motion to vacate a default judgment …is addressed to the sound discretion of the district court." State St. Bank and Tr. Co. v Inversiones Errazuriz Limitada, 374 F.3d 158, 166

(2d Cir. 2004). "Because there is a 'preference for resolving disputes on the merits,' doubts should be resolved in favor of the defaulting party." Powerserve Intern., Inc. v Lavi, 239 F.3d 508, 514 (2d Cir. 2001) (quoting Enron Oil Corp. v Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993)).

### V. ARGUMENT

#### a. Defendants' Default Was Inadvertent and Non-Willful.

Defendants' default in this proceeding was clearly inadvertent and non-willful. "In the context of a default, the Second Circuit has interpreted 'willfulness' to mean 'more than merely negligent or careless.'" Johnson v New York Univ., 324 F.R.D. 65, 70 (S.D.N.Y. 2018), aff'd, 800 F. App'x 18 (2d Cir. 2020) (quoting S.E.C. v. McNulty, 137 F.3d 732, 738 (2d Cir. 1998)). "[T]he court may find a default to have been willful where the conduct of counsel or the litigant was egregious and was not satisfactorily explained," for instance, when defendants "failed, for untenable reasons, after defendants had 'purposely evaded service for months,' to answer the complaint." McNulty, 137 F.3d at 739; *See also*, New York v Green, 420 F.3d 99, 108 (2d Cir. 2005) (To establish willfulness requires "something more than mere negligence, such as egregious or deliberate conduct, although the degree of negligence in precipitating a default is a relevant factor to be considered.").

As detailed in his affidavit, Mr. Ceide is a professional musician who devotes more than eighty percent of his time to touring and performing with his band, *Zafem*. Due to his extensive travel schedule and the volume of mail and correspondence he receives as a prominent musician, Mr. Ceide has great difficulty managing all his communications. He has no specific recollection of ever being served with the summons and complaint, nor with any application for default judgment. Upon information and belief, Plaintiffs failed to properly effect service of process in this action.

According to Mr. Ceide, he first became aware of this action only upon receiving a copy of the Default Judgment from Plaintiffs' counsel. Immediately upon learning of the judgment, Mr. Ceide retained undersigned counsel, who promptly reached out to Plaintiff's and undertook preparation of the present motion to set aside the default and emergency application to stay enforcement of the Default Judgment. Lastly, as evidenced by his submission of a proposed answer and counterclaims, Mr. Ceide's good-faith intention is to have this matter adjudicated on the merits, rather than to avoid or unduly delay the proceedings.

b. **Defendants Have Several Meritorious Defenses.**

A defendant seeking to set aside a default judgment "must present some evidence beyond conclusory denials to support his defense." Enron Oil Corp. v Diakuhara, 10 F.3d 90, 98 (2d Cir. 1993). "The test of such a defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." Id. at 98. As detailed herein, Defendants have several meritorious defenses that, if proven at trial, would constitute a complete defense.

1. **Defendants Have Established a Meritorious Defense Based on Prior Use of the name *Zafem*.**

Defendants, who have been continuously producing music and performing under the name *Zafem* since 2016, have a meritorious defense based on their worldwide and continuous use of the *Zafem* band name. "Neither application for nor registration of a mark at the federal level wipes out the prior non-registered, common law rights of others." Jackpocket, Inc. v Lottomatrix NY LLC, 645 F. Supp. 3d 185, 230-31 (S.D.N.Y. 2022), aff'd, 23-12-CV, 2024 WL 1152520 (2d Cir. Mar. 18, 2024) (quoting, 5 *McCarthy on Trademarks* § 26:53). Even if a mark has become incontestable, "the senior user retains a right to use the mark in the geographic area wherein that

7

user accrued common law rights superior to the registrant prior to the date of registration." <u>Dial-A-Mattress Operating Corp. v. Mattress Madness, Inc.</u>, 841 F. Supp. 1339, 1353 (E.D.N.Y. 1994) (citing 15 U.S.C. § 1065). In order to maintain a prior use defense, the defendant must demonstrate "(1) present rights in the mark, (2) acquired prior to the date of registration, (3) continual use of the mark since that date, and (4) use prior to the registrant on the goods or services that are in issue." Id. at 1353-54.

As set forth in his affidavit, Mr. Ceide founded the band *Zafem* in 2016, began performing and recording in 2017, released Zafem's first single and video in 2019, and has since used that name continuously in connection with live musical performances, recordings, and public promotions throughout the United States, the Caribbean, and internationally. Indeed, during the COVID-19 pandemic, *Zafem* performed a live-streamed show that was viewed by more than 35,000 fans. Therefore, long before Plaintiff's alleged registration, *Zafem* had achieved significant recognition within the Haitian and broader Caribbean music community. The band released original compositions, performed at major venues and festivals, and maintained an active presence on social media and streaming platforms under the *Zafem* name.

Mr. Ceide's affidavit further establishes that he and his band have never abandoned or ceased use of the *Zafem* mark. To the contrary, they have consistently performed and distributed music under that name, developed promotional materials, and engaged with fans and industry professionals using the *Zafem* identity. These facts demonstrate that Defendant possesses present and continuing rights in the mark that predate and supersede Plaintiff's claimed registration in 2021.

In contrast, there is no evidence that Plaintiffs continuously used the mark "Zafem World Entertainment" in the years 2016 and 2017, when Defendants publicly announced their band

8

*Zafem*. Indeed, in 2016/2017, there is no evidence on the record that establishes that Plaintiffs were using in commerce the mark "Zafem World Entertainment." Under the Lanham Act, "[t]he term 'use in commerce' means the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark." 15 U.S.C.A. § 1127. The Lanham Act further defines "Abandoned" in the context of trademark use as: "[a] Mark shall be deemed to be 'abandoned' if either of the following occurs: (1) When its use has been discontinued with intent not to resume such use….Intent not to resume may be inferred from circumstances. Nonuse for 3 consecutive years shall be prima facie evidence of abandonment. 'Use' of a mark means the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark…" Id. Only after Plaintiffs came to discover that the famous Haitian musician, Dener Ceide, had launched his new music project, *Zafem*, did the Plaintiffs seek to recommence use and attempt to register the name "Zafem World Entertainment", in what appears to be a deliberate and bad-faith effort to capitalize on Defendants' success.

Accordingly, even if Plaintiff were deemed to hold a facially valid registration, such registration is subordinate to Defendants' superior common-law rights based on prior and continuous use—especially when compared to Plaintiff's apparent abandonment of its own mark at the time Defendants launched their band, *Zafem*. The evidence before this Court, therefore, establishes a meritorious defense warranting vacatur of the default so that the matter may be adjudicated on the merits.

### 2. Defendants' Band Name *Zafem* Will Not Likely Cause Confusion with Plaintiffs' Trademark Registration of "Zafem World Entertainment".

Plaintiff's registration of the "Zafem World Entertainment" was evidently done to capitalize on Defendants' emerging success with their band *Zafem*. "[T]o succeed in a Lanham Act suit for trademark infringement, a plaintiff has two obstacles to overcome: the plaintiff must

9

prove that its mark is entitled to protection and, even more important, that the defendant's use of its own mark will likely cause confusion with plaintiff's mark." Gruner + Jahr USA Pub., a Div. of Gruner + Jahr Print. and Pub. Co. v Meredith Corp., 991 F.2d 1072, 1074 (2d Cir. 1993).

      Relevant in this case is the question of whether the Defendants' use of the band name *Zafem* will likely cause confusion with Plaintiff's use of the word "Zafem" as part of its greater name, "Zafem World Entertainment." "The factors ordinarily weighed in determining the likelihood of confusion are the familiar *Polaroid*[2] factors, which include: 1) the strength of the plaintiff's mark; 2) the similarity of plaintiff's and defendant's marks; 3) the competitive proximity of the products; 4) the likelihood that plaintiff will "bridge the gap" and offer a product like defendant's; 5) actual confusion between products; 6) good faith on the defendant's part; 7) the quality of defendant's product; and 8) the sophistication of buyers." *See* Meredith Corp., at 1077 (2d Cir. 1993). Even assuming *arguendo* that Plaintiff possesses a valid registration, the record does not support a finding of likelihood of confusion under the eight *Polaroid* factors.

      Plaintiffs' "Zafem World Entertainment mark" is weak not only conceptually, but in its actual use in commerce. The record shows that Plaintiffs' use of the term *Zafem* has been limited to small event promotions and social media postings, primarily in connection with organizing small local events in Brooklyn, New York. In contrast, Mr. Ceide has used *Zafem* continuously and prominently for nearly a decade as the identifying name of his musical group—on recordings, streaming platforms, live performances, and international tours. Through that sustained use, *Zafem* has become widely recognized within the Haitian and broader Caribbean music community as referring to Mr. Ceide's band. Plaintiffs' comparatively minimal and likely derivative use does not

---

[2] Polaroid Corp. v Polarad Elecs. Corp., 287 F.2d 492, 494 (2d Cir. 1961).

10

establish commercial strength or secondary meaning. Accordingly, this factor weighs strongly against any likelihood of confusion.

As it concerns the similarity of the marks, although both parties use the word *Zafem*, Defendants' use is inseparable from their band's distinct artistic identity, logo, and visual presentation developed over years of international performance and branding. Plaintiffs' use, if any, is in conjunction with the phrase "Zafem World Entertainment", which is objectively different than that of Defendants and unlikely to cause confusion among Plaintiffs' small following.

Further, there is no evidence of actual confusion among concertgoers, promoters, or streaming audiences. To the contrary, the public consistently associates *Zafem* with Mr. Ceide's band, which enjoys a strong and loyal fan base across Haitian and Caribbean communities. In similar cases, the absence of confusion in the face of substantial coexistence weighs heavily in favor of the defendant. *See* Streetwise Maps, Inc. v. Vandam, Inc., 159 F.3d 739, 745 (2d Cir. 1998) ("A probability of confusion may be found when a large number of purchasers likely will be confused as to the source of the goods in question."). In this instance, there is no risk of confusion, as Defendants' band *Zafem* has international acclaim, while Plaintiffs' production company, "Zafem World Entertainment," is localized in Brooklyn, New York.

Defendant's adoption and use of the *Zafem* name was in good faith and long preceded Plaintiff's registration. Mr. Ceide independently coined and began using *Zafem* in 2016 as the name of his musical group (inspired by the Tabou Combo song, "Kite m fè Zafem"), unaware of any competing claim. His use has always reflected genuine artistic expression rather than any attempt to trade on another's goodwill. By contrast, Plaintiffs' later registration—undertaken despite near-certain awareness of Defendant's established and widely recognized band—demonstrates bad faith on Plaintiffs' part, not Defendants'. Moreover, Defendants' musical works

11

are of exceptional quality, featuring professional production, a substantial international following, and significant critical acclaim. Such professional and authentic use reduces any risk that consumers would believe the parties' works share a common source. Indeed, music consumers, event promoters, and online audiences are discerning and select entertainment based on the reputation and identity of performers, not simply on a shared word or phrase. Given the public's long-standing familiarity with Defendant's *Zafem* band, the likelihood of confusion is remote and implausible.

Evaluating the totality of the *Polaroid* factors, there is no plausible likelihood of confusion between Plaintiff's alleged mark and Defendant's longstanding use of *Zafem* as a band name. Defendants' use is prior, continuous, and undertaken in good faith, while Plaintiffs' registration is weak, recent, and apparently unaccompanied by genuine commercial use. Accordingly, the *Polaroid* analysis confirms that Plaintiff cannot sustain its claims that Defendants violated their mark.

### 3. Plaintiffs' Procured Their Trademark Registration of "Zafem World Entertainment" in Bad Faith.

In addition to Defendant's prior and continuous use of the name *Zafem*, the record strongly suggests that Plaintiff obtained its purported registration in bad faith. As set forth in Mr. Ceide's affidavit, *Zafem* had already achieved wide public recognition and commercial success well before Plaintiff's application for registration. The band's performances, recordings, and media coverage made *Zafem* well known throughout the Haitian music industry and among international audiences. According to Mr. Ceide, it would be very unlikely for Plaintiffs to have not known about *Zafem* at the time they registered the mark "Zafem World Entertainment."

Plaintiff's decision to register the "Zafem World Entertainment"—despite this established public association with Mr. Ceide's band—demonstrates an effort not to create a distinct brand,

but rather to appropriate and exploit the goodwill and reputation that Defendant had already developed. Such conduct constitutes bad faith under the Lanham Act and related case law. *See, e.g.*, Star Indus., Inc. v. Bacardi & Co., 412 F.3d 373, 388 (2d Cir. 2005) (bad faith exists where a party adopts a mark with intent to capitalize on another's reputation); *see also* Streetwise Maps, Inc. v. Vandam, Inc., 159 F.3d 739, 745 (2d Cir. 1998).

Assuming Plaintiffs knew of Mr. Ceide's band – as all or nearly all Haitian musicians have—the fact that Plaintiffs sought to register the mark for "Zafem World Entertainment" without mentioning to the USPTO that Defendants were producing music and performing under the name *Zafem* is evidence of Plaintiffs' bad faith. In its application to register "Zafem World Entertainment," Plaintiffs would have necessarily affirmed the following:

> "[T]o the best of his/her knowledge and belief, no other person has the right to use the mark in commerce, either in identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, mistake, or deception." 15 U.S.C.A. § 1051(a)(3)(D).

To the extent that Plaintiffs affirmed the foregoing in their trademark application, Plaintiffs have made a material misrepresentation in what appears to be a deliberate effort to misappropriate the goodwill already cultivated by *Zafem*.

Because the record suggests that Plaintiffs knowingly sought to register and enforce a mark that was already in use by Defendants, its registration cannot confer superior rights. The equities therefore favor setting aside the default judgment to prevent unjust enforcement of a registration obtained through bad faith and to allow the Court to evaluate the parties' respective rights on a full evidentiary record.

13

### c. Plaintiffs Would Not Be Prejudiced by Setting Aside the Default.

Vacating the default judgment will not prejudice Plaintiffs in any meaningful way. Prejudice in this context means more than mere delay; it requires a showing that the delay will cause "loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." Davis v. Musler, 713 F.2d 907, 916 (2d Cir. 1983) (quoting 10 C. Wright, A. Miller and M. Kane, *Federal Practice and Procedure: Civil,* § 2693 at 477–93 (1983)); *see also* Enron Oil Corp. v Diakuhara, 10 F. 3d 90, 98 (2d Cir. 1993). None of those concerns is present here.

Plaintiffs' claims rest primarily on trademark registration and alleged marketplace confusion—issues that are determined through documentary evidence and public records, not fading witness memories. Plaintiffs will suffer no evidentiary disadvantage if this case proceeds on the merits. In fact, reopening the matter will simply allow a fair adjudication of rights based on the actual history of use of the *Zafem* name in commerce.

Moreover, the equities strongly favor setting aside the Default Judgment. Defendant Dener Ceide and his band *Zafem* are internationally recognized and have performed for years under that name, and for several years before Plaintiffs' registration. The *Zafem* name, as used by Defendants, carries substantial goodwill, artistic value, and cultural significance within the Haitian and Caribbean music community. Plaintiffs, by contrast, have engaged in what appears to be only limited use of the name in connection with small-scale event promotions. Far from being harmed by Defendants' activities, Plaintiffs have actually benefitted from the positive reputation and public recognition that Defendants have built around *Zafem*.

Setting aside the default will ensure that these facts are examined and tested in an adversarial proceeding. Plaintiffs retain their full opportunity to prove whatever rights they believe

they possess; they simply will no longer enjoy an unearned windfall resulting from a procedural default. Because there is no showing of prejudice, and because the balance of equities and the public interest favor resolving cases on their merits, the default judgment should be vacated. *See* American Alliance Ins. Co. v. Eagle Ins. Co., 92 F.3d 57, 62 (2d Cir. 1996) (noting the "strong preference for resolving disputes on the merits" rather than by default).

> **d.  The Judgment Amount Should Be Set Aside Because Defendants' Use of the Band Name *Zafem* Was Not a Willful Infringement of Defendants' Alleged Mark.**

Even assuming arguendo that Plaintiffs' registration for "Zafem World Entertainment" is valid, the Court's imposition of a statutory award of $1 million is excessive because the record contains no evidence that Defendants acted willfully or in bad faith by using the name *Zafem*. As the Court noted in its decision and order, 15 U.S.C. § 1117(c) authorizes statutory damages up to $200,000 per infringed mark, or $2 million per infringed mark if the infringement is willful. The Court further concluded, based on the unsupported allegations in the Complaint (Plaintiff's papers in support of its motion for default have no affidavits from the individual Plaintiffs), that Defendants' alleged infringement was willful, warranting a higher order of damages.

"In the default judgment context, a court has discretion to award a statutory damages amount that it feels just under the circumstances." Turn On Prods., Inc. v Almost Famous Apparel, LLC, 18CV00625ILGRER, 2019 WL 2436297, at *5 (E.D.N.Y. Apr. 12, 2019). "Where there is little evidence to support the amount of damages that plaintiff requests, courts often award far-below the statutory maximum and far-below the plaintiff's demand." Id. In this instance, the Court's award of $1 million in statutory damages is unsupported for several reasons.

As detailed in Mr. Ceide's affidavit, Defendants adopted the name *Zafem* in 2016—years before Plaintiffs registered their mark. Further, Mr. Ceide's naming of his band *Zafem* was arrived

15

at independently from his inspiration by Haitian musical culture, his experience as a performer with the famous Haitian band *Tabou Combo* (where Mr. Ceide was the lead guitarist and singer from 2008-2013), and the *Tabou Combo* song "Kite m fè Zafem." Moreover, in 2016, when Mr. Ceide began using the band name *Zafem,* Plaintiffs were not publicly using "Zafem World Entertainment" in commerce, and there is no evidence that Defendants had any knowledge of Plaintiffs or their alleged mark. To the contrary, *Zafem* was chosen as an expression of Haitian identity and artistry, not as a commercial imitation. Defendants' extensive creative output—albums, live tours, streaming presence, and recognition across the Haitian community—reflects bona fide artistic use rather than an attempt to exploit Plaintiffs' goodwill.

Defendants' good faith origin of their use of the name *Zafem* should not be disregarded. Mr. Ceide confirms that he named their band *Zafem*, independent of any influence or knowledge of the "Zafem World Entertainment" mark, after being inspired by his time playing with Tabou Combo and their song Kite m fè Zafem, which means "Let me do my thing" in Haitian Creole. Indeed, *Zafem* was formed, producing music and touring globally before "Zafem World Entertainment" had been registered. Because willfulness is a prerequisite to recovery of enhanced damages under § 1117(a), and because Plaintiffs have made no evidentiary showing of deliberate deception, the damages portion of the default judgment should be set aside. At most, Plaintiffs' claim presents a dispute over concurrent or prior use—an equitable issue—not a case of intentional infringement.

## VI. CONCLUSION

For all the foregoing reasons, Defendants respectfully request that this Court vacate the default judgment entered against them pursuant to Federal Rules of Civil Procedure 55(c) and 60(b). Defendants have demonstrated that their default was inadvertent and not willful, that they

16

possess strong and meritorious defenses based on prior and continuous use of the *Zafem* name, and that Plaintiffs will suffer no prejudice from adjudicating this matter on the merits. In addition, equity and the public interest strongly favor allowing this dispute to be resolved on its merits upon a full evidentiary record, rather than through a procedural default.

Dated: New York, NY
       October 29, 2025

                                        /s/ Kelly Paul Peters
                                        Scoolidge Peters Russotti & Fox LLP
                                        2 Park Avenue, 20th Floor
                                        New York, NY 10016
                                        Tel: 212-729-7708
                                        kelly@sprfllp.com
                                        *Attorneys for Defendants*