Kelly Paul Peters
Scoolidge Peters Russotti & Fox LLP
2 Park Avenue, 20th Floor
New York, NY 10016
Tel: 212-729-7708
kelly@sprfllp.com
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **WISS JOSEPH**; and **MARIE JOSEPH**,<br><br>Plaintiffs,<br><br>~ *versus* ~<br><br>**DENER CEIDE**;<br>**DENER CEIDE PRODUCTIONS, INC.**;<br>"**ZAFEM**";<br>**ZAFEMUSIC.COM**; and<br>**ZAFEMEPK.COM**,<br><br>Defendants. | **Case No. 1:24-cv-6572** |

**DEFENDANTS' MEMORANDUM OF LAW**
**IN SUPPORT OF THEIR MOTION**
**FOR A STAY OF ENFORCEMENT**
**OF DEFAULT JUDGMENT**

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ................................................................................. 1

II. FACTS.......................................................................................................................... 1

III. PROCEDURAL HISTORY ....................................................................................... 4

IV. ARGUMENT ............................................................................................................... 5

a. Defendants Have a Likelihood of Prevailing on Their Motion to Set Aside the Default Judgment. ...................................................................................................................... 5

i. Defendants Are Likely to Prevail on the Set Aside Motion Because Defendants' Default was Inadvertent and Non-Willful. ............................................................................................. 6

ii. Defendants Have Several Meritorious Defenses Based on Defendants' Good Faith Prior Use, the Lack of Confusion Between the Subject Marks, and Because Plaintiffs Procured Their Trademark in Bad Faith. ................................................................................................... 7

b. The Extraordinary Irreparable Harm to Defendants and the Overwhelming Balance of Equities Justify Staying Enforcement of the Default Judgment Pending Resolution of Defendants' Motion to Set Aside the Default Judgment. .............................................................. 13

c. The Court Should Grant a Stay Without Requiring Defendants to Post a Bond................... 14

V. CONCLUSION .......................................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**

Am. All. Ins. Co., Ltd. v Eagle Ins. Co., 92 F.3d 57 (2d Cir. 1996) .............................................. 6

Belizaire v RAV Investigative and Sec. Services, Ltd., 310 FRD 100 (S.D.N.Y. 2015) ............... 5

Dial-A-Mattress Operating Corp. v. Mattress Madness, Inc., 841 F. Supp. 1339 (E.D.N.Y. 1994) ................................................................................................................................................ 8

Gruner + Jahr USA Pub., a Div. of Gruner + Jahr Print. and Pub. Co. v Meredith Corp., 991 F.2d 1072 (2d Cir. 1993) ................................................................................................................ 10

Jackpocket, Inc. v Lottomatrix NY LLC, 645 F. Supp. 3d 185 (S.D.N.Y. 2022), aff'd, 23-12-CV, 2024 WL 1152520 (2d Cir. Mar. 18, 2024) ............................................................................... 7

Laws. Title Ins. Corp. v. Singer, No. 3:07CV804 MRK, 2011 WL 1827268 (D. Conn. Mar. 7, 2011) ....................................................................................................................................... 16

New York City Triathlon, LLC v NYC Triathlon Club, Inc., 704 F. Supp. 2d 305 (S.D.N.Y. 2010) ....................................................................................................................................... 15

New York ex rel. Schneiderman v Actavis PLC, 787 F.3d 638 (2d Cir. 2015) .......................... 14

New York v Green, 420 F.3d 99 (2d Cir. 2005) ............................................................................ 5

Polaroid Corp. v Polarad Elecs. Corp., 287 F.2d 492 (2d Cir. 1961) ......................................... 10

Port Chester Elec. Constr. Corp. v. HBE Corp., No. 86-CIV-4617 (KMW), 1991 WL 258737 (S.D.N.Y. Nov. 27, 1991) ....................................................................................................... 16

Powerserve Intern., Inc. v Lavi, 239 F.3d 508 (2d Cir. 2001) ...................................................... 6

River Oaks Marine, Inc. v. Town of Grand Island, No. 89-CV-1016S, 1992 WL 406813 (W.D.N.Y. Dec. 10, 1992) ..................................................................................................................... 16

Rivera v. Home Depot U.S.A. Inc., No. 16-CV-7552 (KBF), 2018 WL 3105069 (S.D.N.Y. June 25, 2018) ................................................................................................................................... 5

Rodriguez ex rel. Rodriguez v. DeBuono, 175 F.3d 227 (2d Cir. 1999) ....................................... 5

Star Indus., Inc. v. Bacardi & Co., 412 F.3d 373 (2d Cir. 2005) ................................................ 13

State St. Bank and Tr. Co. v Inversiones Errazuriz Limitada, 374 F.3d 158 (2d Cir. 2004) .......... 6

**Statutes**

15 U.S.C.A. § 1051(a)(3)(D) ...................................................................................................... 12

15 U.S.C.A. § 1127 ....................................................................................................................... 8

Fed. R. Civ. P. 62(b), (d) .............................................................................................................. 5

## I. PRELIMINARY STATEMENT

Defendants Dener Ceide ("Ceide") and Dener Ceide Productions, Inc. ("Productions", and together with Ceide as the "Defendants"), by and through their undersigned counsel at the law firm of Scoolidge Peters Russotti & Fox LLP, respectfully submit this Memorandum of Law in support of their motion pursuant to Fed. R. Civ. P. 62 (b) and (d), for a stay of enforcement of the Default Judgment entered against Defendants until such time that the Court has addressed Defendants' Motion to Set Aside the Default Judgment, pursuant to Fed. R. Civ. P. 55(c) and 60(b). *See* ECF No. 35.

## II. FACTS

The facts in support of this motion are set forth in the Affidavit of Dener Ceide, dated October 27, 2025,[1] and which is incorporated by reference herein and being recited again for the purposes of this motion for a stay of enforcement of default judgment.

Defendant Dener Ceide is a renowned Haitian musician, songwriter, and performer with more than twenty-five years of professional experience. He is the founder of the Haitian musical group known as *Zafem* and the sole owner of Dener Ceide Productions, Inc. Mr. Ceide is widely recognized within the Haitian music industry, maintaining more than 88,000 followers on Instagram, 121,000 followers on Facebook, and over 228,000 subscribers on YouTube. His music has been downloaded and streamed millions of times worldwide.

From 2008 to 2013, Mr. Ceide was the lead guitarist and singer for the famous Haitian group called *Tabou Combo*, which had a hit song titled "Kite m fè Zafem," which translates from

---

[1] Mr. Ceide's Affidavit is also being submitted in support of his application to set aside the default judgment in this case.

1

Haitian Creole to "Let me do my thing." Inspired by this song, in 2016, Mr. Ceide founded the band *Zafem*, dedicated to writing and performing Haitian "Kompa" music—a vibrant genre celebrating Haitian culture, art, and rhythm. The term "Zafem," a Haitian-Creole expression meaning "my business," "my thing," or "my deal," is a commonly used colloquial phrase in Haitian culture. Beginning in 2016, Mr. Ceide began writing and producing original works under the *Zafem* name. By 2017, Zafem publicly released its first musical projects, and in October 2019, released the band's first official music video teaser for the song *Savalou*, followed by its full video on October 17, 2019, which has since received tens of thousands of likes and comments.

Since its inception, *Zafem* has achieved widespread acclaim. The group has released two albums that have collectively reached millions of listeners across the globe, and it has performed more than 150 shows internationally, including throughout the United States, Canada, Europe, South America, and the Caribbean. In 2023, *Zafem* became the most-streamed musical group in Haiti and remains one of the most internationally recognized Haitian bands. That same year, Zafem was featured on *Cokarella*, a digital platform devoted to Haitian art and culture, and was ranked on Billboard Magazine's "Top 25," listed as the highest-streamed Haitian band of the year. In 2024, the group received the Caribbean Music Award for Kompa Band of the Year at the ceremony held in Brooklyn, New York.

Mr. Ceide has never met the Plaintiffs Wiss Joseph and Marie Joseph Plaintiffs, and therefore has no personal or professional relationship with them nor any knowledge of their musical activities. Given his prominence in the Haitian music scene, however, it would have been implausible for Plaintiffs—supposedly also Haitian musicians —to be unaware of him or of the band *Zafem* when they sought to register the "Zafem World Entertainment" mark in 2019. Plaintiffs allege that they obtained a U.S. trademark registration for the word "Zafem World

Entertainment" on January 5, 2021, but, upon information and belief, that registration was made in bad faith and with knowledge of Mr. Ceide's longstanding and public use of the name. Plaintiffs failed to disclose to the U.S. Patent and Trademark Office that *Zafem* was already an established and active musical group under Mr. Ceide's leadership, thereby making false or misleading representations in their application.

Mr. Ceide does not recall being served with the summons and complaint in this action, either addressed to him or to his company. Nor does he recall any other contact from or on behalf of Plaintiffs until Plaintiffs' counsel emailed him *after* entry of the Default Judgement. He states that, if he did receive one or both copies of the summons and complaint, he either did not read them, or did not understand them.

As a touring musician with no manager, who spends approximately eighty percent of the year on the road, Mr. Ceide states that he is rarely at his New Jersey residence and struggles to manage the large volumes of fan correspondence, solicitations, and unsolicited packages.

Mr. Ceide's failure to respond to the summons was unintentional. When Mr. Ceide was finally contacted by Plaintiffs' counsel (tellingly, only *after* entry of the Default Judgment), he acted promptly to retain counsel to prepare this motion. His failure to appear earlier resulted from mistake and excusable neglect, not from any intent to ignore or delay the proceedings.

Mr. Ceide has clear and meritorious defenses to Plaintiffs' claims. His use of the name *Zafem* predates Plaintiffs' registration by several years and has generated significant goodwill and recognition internationally. Plaintiffs' trademark filing seeks to misappropriate that goodwill and unjustly claim ownership of a name that Mr. Ceide created, popularized, and made synonymous with Haitian music excellence.

Allowing the default to stand would impose substantial injustice and deprive Defendants of a fair opportunity to present the true history and facts of *Zafem's* creation, success, and public identity. Setting aside the default judgment will enable this dispute to be resolved on its merits, consistent with the principles of fairness and equity that govern federal practice.

For these reasons, Defendants are respectfully requesting a stay of the enforcement of the Default Judgment pending a determination of the Set Aside Motion.

### III. PROCEDURAL HISTORY

This action was commenced by summons and complaint dated September 19, 2024. See ECF 1. According to the docket history of this case, Plaintiffs had difficulty effecting service of process, and as a result, requested and were granted multiple extensions to effect service of process.

On May 5, 2025, the Clerk entered a default against Defendants for having failed to appear or otherwise defend the case. *See* ECF 21-22.

On September 18, 2025, the Court entered a decision and order granting Plaintiffs' motion for default judgment, finding that Defendants had willfully violated Plaintiffs' "Zafem World Entertainment" mark (*see* ECF 28); and further entered the Default Judgment against Plaintiffs in the sum of $1,000,000. *See* ECF 29.

On October 30, 2025, Defendants moved this Honorable Court for a decision and order that vacates and sets aside the Default Judgment (the "Set Aside Motion"). In an effort to maintain the status quo, Plaintiffs are now seeking a decision and order of the Court that stays the enforcement of the Default Judgment entered against Defendants until such time that the Court enters a decision on the Set Aside Motion.

## IV. ARGUMENT

Federal Rules of Civil Procedure 62(b) and 62(d) authorize the court to stay enforcement of a judgment, including injunctive relief, while post-judgment motions are pending or during the pendency of an appeal. *See* Fed. R. Civ. P. 62(b), (d). To determine whether a stay is appropriate, the court must evaluate (1) whether the applicant has made a strong showing that they are likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether the issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. Rivera v. Home Depot U.S.A. Inc., No. 16-CV-7552 (KBF), 2018 WL 3105069 (S.D.N.Y. June 25, 2018). Rodriguez ex rel. Rodriguez v. DeBuono, 175 F.3d 227 (2d Cir. 1999).

As detailed herein, Defendants are entitled to a stay until the Court enters a decision on the Set Aside Motion.

### a. Defendants Have a Likelihood of Prevailing on Their Motion to Set Aside the Default Judgment.

Currently pending before the Court is Defendants' motion to set aside the Default Judgment. *See* ECF No. 35. As detailed in Defendants' Set Aside Motion papers, a Court may set aside an entry of default for good cause under Fed. R. Civ. P. 55(c); and may relieve a party from a final judgment pursuant to Fed. R. Civ. P. 60(b), on account of "mistake, inadvertence, surprise, or excusable neglect." Belizaire v RAV Investigative and Sec. Services, Ltd., 310 FRD 100, 104 (S.D.N.Y. 2015). In such motion under Rule 60(b), the Court is guided by three principal factors: (1) whether the default was willful, (2) whether the defendant demonstrates the existence of a meritorious defense, and (3) whether, and to what extent, vacating the default will cause the nondefaulting party prejudice." New York v Green, 420 F.3d 99, 108 (2d Cir. 2005). *See also* Am. All. Ins. Co., Ltd. v Eagle Ins. Co., 92 F.3d 57, 59 (2d Cir. 1996).

Further, "[a] motion to vacate a default judgment …is addressed to the sound discretion of the district court." State St. Bank and Tr. Co. v Inversiones Errazuriz Limitada, 374 F.3d 158, 166 (2d Cir. 2004). "Because there is a 'preference for resolving disputes on the merits,' doubts should be resolved in favor of the defaulting party." Powerserve Intern., Inc. v Lavi, 239 F.3d 508, 514 (2d Cir. 2001) (quoting Enron Oil Corp. v Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993)).

Defendants have a likelihood of prevailing on their Set Aside Motion because they have a reasonable excuse for their default, several meritorious defenses, because there is no meaningful prejudice to the Plaintiffs, and because there is a strong public policy in support of resolving such disputes on the merits.

### i. Defendants Are Likely to Prevail on the Set Aside Motion Because Defendants' Default was Inadvertent and Non-Willful.

As detailed in his affidavit, Mr. Ceide is a professional musician who devotes more than eighty percent of his time to touring and performing with his band, *Zafem*. Due to his extensive travel schedule and the volume of mail and correspondence he receives as a prominent musician, Mr. Ceide has great difficulty managing all his communications. He has no specific recollection of ever being served with the summons and complaint.

According to Mr. Ceide, he first became aware of this action only upon receiving a copy of the Default Judgment from Plaintiffs' counsel. See Exhibit C to the Affidavit of Ceide. Immediately upon learning of the Default Judgment, Mr. Ceide retained undersigned counsel, who promptly reached out to Plaintiff's and undertook preparation of their motions to set aside the default and application to stay enforcement of the Default Judgment. Lastly, as evidenced by his submission of a proposed answer and counterclaims, Mr. Ceide's good-faith intention is to have this matter adjudicated on the merits, rather than to avoid or unduly delay the proceedings.

### ii. Defendants Have Several Meritorious Defenses Based on Defendants' Good Faith Prior Use, the Lack of Confusion Between the Subject Marks, and Because Plaintiffs Procured Their Trademark in Bad Faith.

*Defendants' Prior and Continuous Use.*

Defendants have several meritorious defenses, which are detailed in the Memorandum of Law submitted in support of Defendants' Motion to Set Aside the Default Judgment. See ECF 35. Most notably, Defendants have a meritorious defense based on their prior and continuous use of their band name, *Zafem*. "Neither application for nor registration of a mark at the federal level wipes out the prior non-registered, common law rights of others." Jackpocket, Inc. v Lottomatrix NY LLC, 645 F. Supp. 3d 185, 230-31 (S.D.N.Y. 2022), aff'd, 23-12-CV, 2024 WL 1152520 (2d Cir. Mar. 18, 2024) (quoting, 5 *McCarthy on Trademarks* § 26:53). Even if a mark has become incontestable, "the senior user retains a right to use the mark in the geographic area wherein that user accrued common law rights superior to the registrant prior to the date of registration." Dial-A-Mattress Operating Corp. v. Mattress Madness, Inc., 841 F. Supp. 1339, 1353 (E.D.N.Y. 1994) (citing 15 U.S.C. § 1065). In order to maintain a prior use defense, the defendant must demonstrate "(1) present rights in the mark, (2) acquired prior to the date of registration, (3) continual use of the mark since that date, and (4) use prior to the registrant on the goods or services that are in issue." Id. at 1353-54.

Mr. Ceide founded *Zafem* in 2016, having been inspired by his time playing with Tabou Combo and its song "Kite m fè Zafem". *Zafem* began performing and recording in 2017, released Zafem's first single and video in 2019, and has since used that name continuously in connection with live musical performances, recordings, and public promotions throughout the United States, the Caribbean, and internationally. In 2020, during the COVID-19 pandemic, *Zafem* performed a live-streamed show that was viewed by more than 35,000 fans. Therefore, well before Plaintiff's alleged registration, *Zafem* had achieved significant recognition within the Haitian and broader

7

Caribbean music community. *Zafem* has also released original compositions, performed at major venues and festivals, and maintained an active presence on social media and streaming platforms. These facts demonstrate that Defendant possesses present and continuing rights in the mark that predate and supersede Plaintiff's claimed registration in 2021.

In contrast, there is no evidence that Plaintiffs continuously used the mark "Zafem World Entertainment" in the years 2016 and 2017, when Defendants publicly announced their band *Zafem*. Indeed, in 2016/2017, there is no evidence on the record that establishes that Plaintiffs were using in commerce the mark "Zafem World Entertainment." Under the Lanham Act, "[t]he term 'use in commerce' means the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark." 15 U.S.C.A. § 1127. The Lanham Act further defines "Abandoned" in the context of trademark use as: "[a] Mark shall be deemed to be 'abandoned' if either of the following occurs: (1) When its use has been discontinued with intent not to resume such use….Intent not to resume may be inferred from circumstances. Nonuse for 3 consecutive years shall be prima facie evidence of abandonment. "Use" of a mark means the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark…" Id. Only after Plaintiffs came to discover that the famous Haitian musician, Dener Ceide, had launched his new music project, *Zafem*, did the Plaintiffs seek to recommence use and attempt to register the name "Zafem World Entertainment", in a deliberate and bad-faith effort to capitalize on Defendants' success.

Accordingly, even if Plaintiff were deemed to hold a facially valid registration, such registration is subordinate to Defendants' superior common-law rights based on prior and continuous use—especially when compared to Plaintiff's apparent abandonment of its own mark

at the time Defendants launched their band, *Zafem*. For these reasons, Defendants have a meritorious defense based on their prior and continuous use of *Zafem*.

### *Lack of Confusion.*

Defendants also have a meritorious defense on the grounds that Defendants' band *Zafem* will not likely cause confusion with Plaintiffs' Mark for "Zafem World Entertainment." "[T]o succeed in a Lanham Act suit for trademark infringement, a plaintiff has two obstacles to overcome: the plaintiff must prove that its mark is entitled to protection and, even more important, that the defendant's use of its own mark will likely cause confusion with plaintiff's mark." Gruner + Jahr USA Pub., a Div. of Gruner + Jahr Print. and Pub. Co. v Meredith Corp., 991 F.2d 1072, 1074 (2d Cir. 1993).

Relevant in this case is the question of whether the Defendants' use of the band name *Zafem* will likely cause confusion with Plaintiff's use of the word "Zafem" as part of its greater name, "Zafem World Entertainment." "The factors ordinarily weighed in determining the likelihood of confusion are the familiar *Polaroid*[2] factors, which include: 1) the strength of the plaintiff's mark; 2) the similarity of plaintiff's and defendant's marks; 3) the competitive proximity of the products; 4) the likelihood that plaintiff will "bridge the gap" and offer a product like defendant's; 5) actual confusion between products; 6) good faith on the defendant's part; 7) the quality of defendant's product; and 8) the sophistication of buyers." *See* Meredith Corp., at 1077 (2d Cir. 1993). Even assuming *arguendo* that Plaintiff possesses a valid registration, the record does not support a finding of likelihood of confusion under the eight *Polaroid* factors.

---

[2] Polaroid Corp. v Polarad Elecs. Corp., 287 F.2d 492, 494 (2d Cir. 1961).

Plaintiffs' "Zafem World Entertainment mark" is weak not only conceptually, but in its actual use in commerce. The record shows that Plaintiffs' use of the term *Zafem* has been limited to isolated event promotions and social media postings, primarily in connection with organizing small events in Brooklyn, New York. In contrast, Mr. Ceide has used *Zafem* continuously and prominently for nearly a decade as the identifying name of his musical group—on recordings, streaming platforms, live performances, and international tours. Through that sustained use, *Zafem* has become widely recognized within the Haitian and broader Caribbean music community as referring to Mr. Ceide's band. Plaintiffs' comparatively minimal and derivative use does not establish commercial strength or secondary meaning. Accordingly, this factor weighs strongly against any likelihood of confusion.

As it concerns the similarity of the marks, although both parties use the word *Zafem*, Defendants' use is inseparable from their band's distinct artistic identity, logo, and visual presentation developed over years of international performance and branding. Plaintiffs' use, if any, is in conjunction with the phrase "Zafem World Entertainment", which is objectively different than that of Defendants and unlikely to cause confusion among Plaintiffs' small following.

Further, there is no evidence of actual confusion among concertgoers, promoters, or streaming audiences. To the contrary, the public consistently associates *Zafem* with Mr. Ceide's band, which enjoys a strong and loyal fan base across Haitian and Caribbean communities. In similar cases, the absence of confusion in the face of substantial coexistence weighs heavily in favor of the defendant. *See* Streetwise Maps, Inc. v. Vandam, Inc., 159 F.3d 739, 745 (2d Cir. 1998) ("A probability of confusion may be found when a large number of purchasers likely will be confused as to the source of the goods in question."). In this instance, there is no risk of

confusion, as Defendants' band *Zafem* has international acclaim, while Plaintiffs' production company, "Zafem World Entertainment," is localized in Brooklyn, New York.

Defendant's adoption and use of the *Zafem* name was in good faith and long preceded Plaintiff's registration. Mr. Ceide independently coined and began using *Zafem* in 2016 as the name of his musical group, unaware of any competing claim. His use has always reflected genuine artistic expression rather than any attempt to trade on another's goodwill. By contrast, Plaintiff's later registration—undertaken despite clear awareness of Defendant's established and widely recognized band—demonstrates bad faith on Plaintiff's part, not Defendants'. Moreover, Defendants' musical works are of exceptional quality, featuring professional production, a substantial international following, and significant critical acclaim. Such professional and authentic use reduces any risk that consumers would believe the parties' works share a common source. Indeed, music consumers, event promoters, and online audiences are discerning and select entertainment based on the reputation and identity of performers, not simply on a shared word or phrase. Given the public's long-standing familiarity with Defendant's *Zafem* band, the likelihood of confusion is remote and implausible.

Evaluating the totality of the *Polaroid* factors, there is no plausible likelihood of confusion between Plaintiff's alleged mark and Defendant's longstanding use of *Zafem* as a band name. Defendants' use is prior, continuous, and undertaken in good faith, while Plaintiffs' registration is weak, recent, and unaccompanied by genuine commercial use. Accordingly, the *Polaroid* analysis confirms that Plaintiff cannot sustain its claims that Defendants violated their mark, therefore demonstrating that Defendants have a likelihood of success on the merits.

*<u>Plaintiffs Registered "Zafem World Entertainment" in Bad Faith.</u>*

Lastly, Defendants also have a likelihood of success on their defense that Plaintiff obtained its purported registration in bad faith. As set forth in Mr. Ceide's affidavit, *Zafem* had already achieved wide public recognition and commercial success well before Plaintiff's application for registration in 2019. The band's performances, recordings, and media coverage made *Zafem* well known throughout the Haitian music industry and among international audiences. According to Mr. Ceide, it would be very unlikely for Plaintiffs to have not known about *Zafem* at the time they registered the mark "Zafem World Entertainment."

Plaintiff's decision to register the "Zafem World Entertainment"—despite this established public association with Mr. Ceide's band—demonstrates an effort not to create a distinct brand, but rather to appropriate and exploit the goodwill and reputation that Defendant had already developed. Such conduct constitutes bad faith under the Lanham Act and related case law. *See*, *e.g.*, Star Indus., Inc. v. Bacardi & Co., 412 F.3d 373, 388 (2d Cir. 2005) (bad faith exists where a party adopts a mark with intent to capitalize on another's reputation); *see also* Streetwise Maps, Inc. v. Vandam, Inc., 159 F.3d 739, 745 (2d Cir. 1998).

Assuming Plaintiffs knew of Mr. Ceide's band – as all or nearly all Haitian musicians have – the fact that Plaintiffs sought to register the mark for "Zafem World Entertainment" without disclosing to the USPTO that Defendants were producing music and performing under the name *Zafem* is evidence of Plaintiffs' bad faith. In its application to register "Zafem World Entertainment," Plaintiffs would have necessarily affirmed the following:

> "[T]o the best of his/her knowledge and belief, no other person has the right to use the mark in commerce, either in identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, mistake, or deception." 15 U.S.C.A. § 1051(a)(3)(D).

To the extent that Plaintiffs affirmed the foregoing in their trademark application, Plaintiffs have made a material misrepresentation in what appears to be a deliberate effort to misappropriate the goodwill already cultivated by *Zafem*.

Because the record suggests that Plaintiffs knowingly sought to register and enforce a mark that was already in use by Defendants, its registration cannot confer superior rights. Defendants again show a likelihood of success on the merits by showing Plaintiffs applied for and procured their trademark for "Zafem World Entertainment" in bad faith.

   **b. The Extraordinary Irreparable Harm to Defendants and the Overwhelming Balance of Equities Justify Staying Enforcement of the Default Judgment Pending Resolution of Defendants' Motion to Set Aside the Default Judgment.**

Defendants have a real and immediate risk of being irreparably harmed absent a stay of enforcement of the Default Judgment until the Court enters a decision on Defendants' Motion to Set Aside the Default Judgment. A showing of irreparable harm is 'the single most important prerequisite' before a stay can be issued. Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmbH, No. 14-CV-585 AJN, 2015 WL 5051769 (S.D.N.Y. Aug. 26, 2015), aff'd, 836 F.3d 153 (2d Cir. 2016), and aff'd, 843 F.3d 48 (2d Cir. 2016). "Irreparable harm is injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." New York ex rel. Schneiderman v Actavis PLC, 787 F.3d 638, 660 (2d Cir. 2015) (internal quotations omitted.)

Here, Defendants' harm is both imminent and impossible to measure in monetary terms. The Default Judgment—entered without Defendants' participation or notice— precludes their use of the *Zafem* name, the very identity under which Mr. Ceide and his band have performed, recorded, and toured worldwide since 2016. *Zafem* is not simply a commercial brand; it is the artistic identity of an internationally recognized musical group whose reputation and goodwill have

been built over nearly a decade. Enforcing the judgment would effectively silence Defendants' creative work, disrupt ongoing performances and streaming accounts, and irreparably damage the goodwill that *Zafem* has earned among its global audience.

Further, absent a stay of enforcement of the Default Judgment, Plaintiffs may attempt to enforce the judgment by notifying streaming services, event promoters, and industry partners that Defendants are prohibited from using the *Zafem* name. Such actions would result in canceled performances, delisted recordings, loss of sponsorships, and confusion among fans and collaborators—harms that cannot later be undone even if this Court vacates the default.

By contrast, Plaintiffs face no comparable prejudice from the brief maintenance of the status quo. Plaintiffs are apparently not actively or regularly performing under the *Zafem* name and will suffer no tangible harm if enforcement is temporarily restrained. The balance of equities thus weighs decisively in favor of a stay to prevent the destruction of Defendants' livelihood, reputation, and goodwill.

Accordingly, this Court should issue a stay pursuant to Rule 62(b) and (d) to preserve the status quo and prevent irreparable harm pending resolution of Defendants' motion to vacate the default judgment.

   c. **The Court Should Grant a Stay Without Requiring Defendants to Post a Bond.**

Federal Rule of Civil Procedure 62 generally contemplates the posting of a bond or other security as a condition for a stay. The purpose of the bond requirement is to safeguard the prevailing party's interest in the judgment while preserving the status quo pending the disposition of post-trial motions. Laws. Title Ins. Corp. v. Singer, No. 3:07CV804 MRK, 2011 WL 1827268, at * 1 (D. Conn. Mar. 7, 2011). The Court, however, retains broad discretion to determine the terms and conditions under which a stay may issue. *See* Port Chester Elec. Constr. Corp. v. HBE Corp.*,*

No. 86-CIV-4617 (KMW), 1991 WL 258737, at * 1 (S.D.N.Y. Nov. 27, 1991) ("In spite of the general requirement that a judgment debtor post a supersedeas bond in the full amount of the judgment, the district court, in its discretion, may use equitable principles to grant a stay of enforcement of the judgment pending appeal without a supersedeas bond, or with only a partial one, if the filing of a supersedeas bond would irreparably harm the judgment debtor and, at the same time, such a stay would not unduly endanger the judgment creditor's interest in ultimate recovery."); *see also* River Oaks Marine, Inc. v. Town of Grand Island, No. 89-CV-1016S, 1992 WL 406813, at * 2 (W.D.N.Y. Dec. 10, 1992) (granting a stay without bond where "innocent third parties may suffer if execution is allowed to proceed").

Such circumstances are present here. The judgment entered by the Court imposes substantial financial obligations that would place a significant burden on Defendants and cause irreparable harm if enforced while their motion to vacate remains pending. Although the Default Decision concluded that Defendants' default was willful, thereby imposing a $1 million statutory judgment, the record does not support such a finding. Defendants formed their band *Zafem* independently, choosing a name drawn from a culturally significant Creole word and inspired by Mr. Ceide's experiences performing with the legendary group *Tabou Combo*. Over the past decade, *Zafem* has earned widespread acclaim within the Haitian community, becoming deeply woven into the fabric of Haitian music and culture. There is little, if any, prejudice to Plaintiff, whose use of "Zafem World Entertainment" remains unaffected by the continued success of Defendants' band. By contrast, enjoining Defendants would sever thousands of fans and members of the Haitian diaspora from one of Haiti's most prominent and unifying musical groups. Immediate enforcement would not only jeopardize Defendants' livelihood and their ability to sustain ongoing artistic activities, but would also adversely impact innocent third parties, including

fans, band members, venues, and collaborators who depend on Defendants' performances and musical output.

Furthermore, although *Zafem* has developed a large and loyal fan base, the Defendants do not derive substantial income from these activities, and are not readily able to post a bond in this case. Therefore, and considering Defendants' good faith intention to resolve these matters on the merits, Defendants respectfully request that the Court grant this temporary stay without requiring Defendants to post a bond.

## V. CONCLUSION

For all the foregoing reasons, Defendants respectfully request that this Court grant a preliminary injunction under Federal Rule of Civil Procedure 62 to preserve the status quo pending the Court's decision on Defendants' Motion to Set Aside the Default Judgment, together with such other and further relief as the Court deems just and proper.

Dated: New York, NY
October 30, 2025

Respectfully submitted,

/s/ Kelly Paul Peters
Scoolidge Peters Russotti & Fox LLP
2 Park Avenue, 20th Floor
New York, NY 10016
Tel: 212-729-7708
kelly@sprfllp.com
*Attorneys for Defendants*