**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| |
|---|
| **WISS JOSEPH**; and **MARIE JOSEPH**, |
| Plaintiffs, |
| *~ versus ~* |
| **DENER CEIDE**; <br> **DENER CEIDE PRODUCTIONS, INC.**; <br> "**ZAFEM**"; <br> **ZAFEMUSIC.COM**; and <br> **ZAFEMEPK.COM**, |
| Defendants. |

Case No. **1:24-cv-6572**

---

**MEMORANDUM OF LAW** *by Plaintiff in Opposition to*
**DEFENDANTS' MOTION TO SET ASIDE DEFAULT**

---

Baruch S. Gottesman, Esq.
GOTTESMAN LEGAL PLLC
11 Broadway, Suite 615
New York, NY 10004
Phone: (212) 401-6910
bg@gottesmanlegal.com
*Counsel for Plaintiffs*

# A     Table of Contents

**B.     Table of Authorities** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

**C.     Introduction and Summary of the Argument** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**D.     Factual Background
        (Incorporates Gottesman Affirmation by Reference)** . . . . . . . . . . . . . . . . . . . . . . 2

**E.     Argument**: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      I.     Defendants' Default was Deliberate . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

           i.     Defendants Defaulted Deliberately. . . . . . . . . . . . . . . . . . . . 3

           iii.    Defendants did not Act Immediately
                 to Remedy their Default . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

           iv.     Defendants' Contumacious
                 Noncompliance with Judgment
                 Shows that they are not Participating
                 in this Litigation in Good Faith . . . . . . . . . . . . . . . . . . . . . 6

      II.    Meritorious Defense:
          Defendants' Alleged Prior Use . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      III.   Meritorious Defense:
          Likelihood of Confusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      IV.    Meritorious Defense:
          Bad Faith Procurement of Mark . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      V.     Lack of Prejudice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**F.     Conclusion** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

### B. <u>**Table of Authorities**</u>

**Cases**

*Addison v. Reitman Blacktop, Inc.*,
   272 F.R.D. 72 (E.D.N.Y. 2010) ................................................................................................ 3

*C=Holdings B.V. v. Asiarim Corp.*,
   992 F. Supp. 2d 223 (S.D.N.Y. 2013) ........................................................................................ 9

*Davis v. Musler*,
   713 F.2d 907 (2d Cir. 1983) .................................................................................................... 12

*Dial-A-Mattress Operating Corp. v. Mattress Madness, Inc.*,
   841 F. Supp. 1339 (E.D.N.Y. 1994) .......................................................................................... 7

*Enron Oil Corp. v. Diakuhara*,
   10 F.3d 90 (2d Cir. 1993) .......................................................................................................... 3

*J.T. Kalmar GMBH v. KLS Lighting Co., Ltd.*,
   2019 Case No. 17-cv-7505 (E.D.N.Y. 2019) .......................................................................... 10

*Mobil Oil Corp. v. Pegasus Petroleum Corp.*,
   818 F.2d 254 (2d Cir. 1987) .................................................................................................... 10

*Municipal Credit Union v. Queens Auto Mall, Inc.*,
   126 F. Supp. 3d 290 (E.D.N.Y. 2015) ....................................................................................... 9

*NDF1, LLC v. Verwayne, Case -*,
   5584, 2025 WL 140006 (May 14, 2025 E.D.N.Y. 2025) ......................................................... 4

*NDF1, LLC*,
   2025 WL (May 14, 2025 E.D.N.Y. 2025) ................................................................................ 6

*Polaroid Corp. v. Polarad Elecs. Corp.*,
   287 F.2d 492 (2d Cir. 1961) ...................................................................................................... 8

*Prokos v. Grossman*,
   2024 Case No. 19-cv-4028 (2024, E.D.N.Y.) ........................................................................... 5

*Tverdy v. Metro Auto Body Inc., Case -*,
   3153, 2020 WL 7343304 (E.D.N.Y. Dec. 14, 2020) ................................................................ 3

### C. Introduction and Summary of Argument

More than a year after being served with the Order to Show Cause, nearly seven months after their time to respond to the Summons and Complaint expired, and more six weeks after they admitted that they actually knew of this lawsuit, the Defendants appeared and moved to Set Aside the Judgment.

The Defendants argue that the Default was inadvertent and non-willful, Defendant's Memorandum of Law in Support at 35-1, pp. 6-7 (pdf pages 9-10). For the reasons detailed in the accompanying Affidavit in Opposition by Baruch S. Gottesman ("Gottesman Aff.") and addressed below, that claim is plainly untrue. Further, the Defendants' continued contumacious refusal to comply of the Court's Judgment and proactive efforts to violate the Judgment belies any argument that the Defendants are now committed to approaching this litigation in good faith.

The Defendants argue that they have a meritorious defense based on prior use of the name ZAFEM since 2016, Defendants' Memo at 35-1, pp. 7-10 (pdf pages 10-12). For the reasons argued below, that claim patently unmeritorious. It is disproved by the public record that shows the Defendants have continued to use – and registered as "ZAFEM BAND" – as far back as 2011.

The Defendants next argue that they have a meritorious defense because Defendants' use of "Zafem" would not be likely to cause confusion with "Zafem World Entertainment", Defendants' Memo at 35-1, pp. 9-12 (pdf pages 12-15). For the reasons argued below, that is patently unmeritorious because the parties' respective USPTO trademark applications made clear that the key element is the word ZAFEM.

The Defendants next argue that they have a meritorious defense based on the Plaintiffs' alleged procurement of the ZAFEM mark in bad faith, Defendants' Memo at 35-1, pp. 12-13 (pdf pages 15-16). For the reasons argued below, that is patently unmeritorious because the public record that shows the Defendants registered and continued to use the Mark more than a half-decade before the Defendants claim to have started their band.

The Defendants finally argue that there would be no prejudice to any party by reopening this case more than a half-year after the Defendants were served and that the Judgment is inappropriate, Defendants' Memo at 35-1, pp. 14-16 (pdf pages 16-18). That argument is also hollow for the reasons argued here.

For these reasons and explained below, the Plaintiffs respectfully oppose the Motion to Set Aside the Judgment.

### D. **Factual Background**

We respectfully incorporate the Affidavit in Opposition by Baruch Gottesman, Counsel for the Plaintiffs. The upshot of the background is that the Defendants have had knowledge of this dispute for more than two years, knowledge of this specific lawsuit for more than a year, and that they waited more than seven (7) months after being served to appear. Any claim of inadvertence or excusable neglect is not credible.

In addition, the Affidavit shows that the Defendants' new attitude of cooperation is factitious because the Defendants have continued to intentionally and contumacious refuse to comply with the Judgment. If the Defendants are not going to comply with this Court's orders anyway, plainly this Motion is intended only as a delay tactic and to vexatiously waste the Plaintiffs resources. The facts also show that the meritorious defenses do not stand up to scrutiny.

E.     **Argument**

I.   **Defendants' Default was Willful**

"[The Second Circuit has] established three criteria that must be assessed in order to decide whether to relieve a party from default or from a default judgment. These widely accepted factors are:

"(1)   whether the default was willful;

"(2)   whether setting aside the default would prejudice the adversary; and

"(3)   whether a meritorious defense is presented."

*Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993)(formatting added).

This Court has emphasized that "a finding of willfulness is only appropriate where there is evidence of bad faith or the default arose from egregious or deliberate conduct, and any doubt about willfulness should be resolved in defendants' favor." *Tverdy v. Metro Auto Body Inc.*, Case No. 20-cv-3153, 2020 WL 7343304, *2 (E.D.N.Y. Dec. 14, 2020)(cleaned up) *citing Addison v. Reitman Blacktop, Inc.*, 272 F.R.D. 72, 76 (E.D.N.Y. 2010).

i.   **Defendants Defaulted Deliberately**

As the Gottesman Affidavit shows, the Defendants had actual knowledge of this lawsuit as of September 20, 2024, Gottesman Aff. ¶¶ 15-20. The Order to Show Cause with all supporting papers (including the Complaint) were sent to the same e-mail that the Defendants acknowledged provided them notice of the Judgment, *See* Gottesman Aff., Exh. H.

Through the course of this litigation, the Defendants were served at their self-reported business and residential addresses with all Motion papers, Gottesman Aff. ¶¶ 21-25. And most importantly, the Defendants were each served with process in March 2025, Gottesman Aff. ¶¶ 21-24 and Exhs. J and K. To underline, Dener Ceide was personally served on March 25, 2025.

3

Simply put, the Defendants' claim that "This [e-mail received on September 19, 2025] was the first time I became aware that this lawsuit has been filed against me and my company." Ceide Affidavit, ECF 35-2, ¶ 40, is not credible as can be seen in the undisputed documentary record. The Defendant was physically and personally served. The Defendants received copies of the papers going back more than a full calendar year. The Defendants were sent physical copies by mail of all relevant filings to the corporate Defendant's registered agent address and to the residential address where Mr. Ceide was physically served

In addition, the Defendants' claim that they had not received the filings is itself hedged by their acknowledgment that "If I was served, I evidently did not read, or, if I did read, I did not understand the documents delivered to me." Ceide Affidait, ECF 35-2, ¶ 41.

Simply stating "If I was served, I evidently did not read" the papers, is analogous to the Defendants in *NDF1, LLC v. Verwayne*, Case No. 24-cv-5584, 2025 WL 140006 (May 14, 2025 E.D.N.Y.) where this Court found that a Defendants' naked claim that they "had no knowledge of the lawsuit during the period a response was required" does not negate a finding of deliberate default. Choosing to not read papers you are served with is a "deliberate" act.

The Defendants claim that they ignored the case because they "often receive mail from various law firms and legal organizations attempting to solicit my business. I am also approached by scammers and others seeking to take advantage of my artistic success." Ceide Aff. at ¶ 43 is neither credible nor substantiated by any evidence. It is also contradicted by the Defendants' successful ability to read and understand their legal obligations once they received the Final Judgment. In *Jaramillo v. Vega*, 675 Fed. App'x 76, 77 (2d Cir. 2017) a Defendant's claim that the Defendant ignored legal papers served on them because they thought the papers were for another matter was not sufficient to overcome a finding of willful default.

Rather, it appears that when this Honorable Court denied the initial application for a Temporary Restraining Order, the Defendants made a strategic decision that "the best way to deal with this litigation was not to deal with it at all in the hope that plaintiff would simply determine that the burden of pursuing it was not worth the benefits he would receive." *Prokos v. Grossman*, Case No. 19-cv-4028 (Nov. 26, 2024 E.D.N.Y.)(unpublished, copy at Exh. S to the Gottesman Aff.).

Defendants had actual knowledge of this lawsuit. They were served with process more than 6 months ago. They made a strategic decision to default which this Court should respect, and the Motion to Set Aside the Default should be denied.

ii. **Defendants did not Act Immediately to Remedy their Default**

Even in Defendants' narrative that their default was not willful and deliberate because they chose not to read the Summons and Complaint that was served on them, the Defendants at least knew of this case on September 19, 2025. The Defendants admit they received an e-mail with a copy of the Judgment, Ceide Aff., ¶ 40, in September and then retained Counsel a week later, *See* Gottesman Aff. at Exh. L.

But still Defendants dawdled.

Six weeks after they received the Judgment and by their own admission were aware of this case, the Defendants appeared. And even then, the appearance was not on the Defendants' own initiative, but only under the threat of a Motion to Compel and for Sanctions, *See* Gottesman Aff. at Exh. M.

The Defendants' failure to participate in good faith with this litigation, even after they knew about the Judgment, "is not indicative of diligence on their part; rather, it is another indicator of a response so cavalier that it amounts to willfulness", *NDF1, LLC* at *4.

      iii.      **Defendants' Contumacious Noncompliance with Judgment Shows that they are not participating in this Litigation in Good Faith**

The Defendants' protestation that notwithstanding their default, they are now appearing in good faith and are ready to Answer the Complaint and participate in this litigation rings hollow.

As shown in the Gottesman Affirmation, the Defendants have entirely refused to comply with the Judgment and the injunction, Gottesman Aff. ¶¶ 41-47. The Defendants have actively and contumaciously violated their duties under the Judgment, *See* Gottesman Aff. ¶¶ 48-61. Whatever the potential merits of the Defendants' Motion to Set Aside the Default and the Motion for a Stay of Enforcement, so long as the Judgment with the injunction has issued and the Defendants have actual knowledge of it, they must comply with it.

While the Plaintiffs will separately move to compel and for sanctions, this contemptuous behavior demonstrates that the Defendants have no intention to participate in good faith in this litigation. If Defendants are successful in vacating the Judgment and staying enforcement, they will continue as they have before. And if they are not successful, the Defendants have demonstrated that they will refuse to comply with the Court's orders. For that reason, the Defendants' appearance in this action and their promises to file an Answer and cooperate with this litigation are entirely not credible.

Since the Defendants are unwilling to comply with this Court's Orders – even at a sensitive time when they are asking for discretionary and equitable relief – how can the Plaintiffs or this Court feel confident that the Defendants' newfound desire to participate in this case is anything but a ruse?

Since the Defendants' participation in this case is not in good faith, the Motion to Set Aside the Judgment should be denied.

II. **Meritorious Defense:
Defendants' Alleged Prior Use**

The Defendants argue that they have a meritorious defense based on prior use of the name ZAFEM since 2016, Defendants' Memo at 35-1, pp. 7-10 (pdf pages 10-12). The argument is that even if a USPTO-registered Trademark has become incontestable, "the senior user retains a right to use the mark in the geographic area wherein that user accrued common law rights superior to the registrant prior to the date of registration." *Dial-A-Mattress Operating Corp. v. Mattress Madness, Inc.*, 841 F. Supp. 1339, 1353 (E.D.N.Y. 1994).

As an initial matter, the Defendants provide no factual support for this supposed meritorious defense. Other than a wide reference to "the United States, the Caribbean, and internationally", Defendants' Memo at p. 8, and a youtube livestream, no specifics are provided.

And more importantly, it's not true.

As shown in the Gottesman Affirmation, the Plaintiffs registered a business with the County Clerk of Kings County as far back as 2011. See Certified Copy of the Business Certificate with the County Clerk of Kings County registered in **May 2011** at Exhibit T of the Gottesman Affirmation. This filing can be independently confirmed with the Minutes of the Kings

County Clerk, a printout of which is available at **Exhibit U**.[1], and have been continuously engaged in the use of the Zafem Mark since that time. Annexed as Exhibit V to the Gottesman Affirmationis a printout of https://www.youtube.com/results?search_query=%22Zafem+band%22&sp=CAI%253D which shows a strict search on Youtube for the term "Zafem Band" organized by date. Scrolling down to the bottom (page 45 of the Exhibit) shows the use of ZAFEM name by the Plaintiffs as far back as 2012.

Bottom line is that the even assuming the Honorable Court were inclined to re-open this case for procedural purposes, doing so would be a gigantic waste of judicial resources to litigate a "defense" that has no legs. Since there is no meritorious defense of prior use, the Defendants respectfully submit that the Honorable Court should deny the Motion to Set Aside the Judgment.

III. **Meritorious Defense:
Likelihood of Confusion**

The Defendants argue that they have a meritorious defense based on the theory that the Defendants' use of Zafem would not be likely to cause confusion with "Zafem World Entertainment", Defendants' Memo at 35-1, pp. 9-12 (pdf pages 12-15).

As this Court explained:

> "Likelihood of consumer confusion is typically examined by reference to the so-called *Polaroid* factors, *See Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961). However, application of the *Polaroid* factors is unnecessary where use of an identical or 'counterfeit' mark is at issue, because such use is

---

[1] The Kings County Clerk's office does not allow direct links to filings, but it can be found at https://iapps.courts.state.ny.us/webccos/kingscc/businessSearch. If a User enters Zafem into the "Business Name" and completes the Captcha they will be shown the County Clerk filing ID No. 152080 on May 31, 2011. The information provided there is displayed in Exhibit U of the Gottesman Affirmation.

'inherently confusing' and so 'consumer confusion is presumed.' *C=Holdings B.V. v. Asiarim Corp.*, 992 F.Supp. 2d 223, 240241 (S.D.N.Y. 2013)"

*Municipal Credit Union v. Queens Auto Mall, Inc.*, 126 F. Supp. 3d 290, 292959 (E.D.N.Y. 2015).

On its face, ZAFEM infringes the Plaintiffs' Mark.

First – the Plaintiffs clarified in their original Trademark Application and in the Response to Office Action, See Gottesman Aff. at Exh. R., that the heart of the Mark is:

> "The mark consists of the wording "ZAFEM" in stylized form and shaped like a semi circle, where the letter "Z" is in blue color, the letter "A" in "ZAFEM" is in blue and purple color, the letter "F" in "ZAFEM" is in purple color, the letter "E" in "ZAFEM" is in purple and red color, and the letter "M" in "ZAFEM" is in red color; all the foregoing on a white background."

See Response to Office Action at p. 1 (Exhibit R to the Gottesman Affirmation).

Second – the Plaintiffs confirmed in their Response that: "No claim is made to the exclusive right to use WORLD ENTERTAINMENT apart from the mark as shown." The Mark was "ZAFEM" with some additional stylistic elements.

Third – The Defendants themselves acknowledge that "Zafem" is the "inherently distinctive" aspect of the Mark. That's why the Defendants have filed a series of knockoff applications last week under "XAFEM" (Gottesman Aff. at Exh. P), "ZAFÈM", (Gottesman Aff. at Exh. O), "ZAFÈN" (Gottesman Aff. at Exh. N); as well as the new registration of a new company under the name ZAFEM LLC (Gottesman Aff. at Exh. R). Defendants claim in each of their applications that ZAFEM (and its knockoffs) have no inherent meaning in any language.

For these reasons, "consumer confusion is presumed" since the infringement is a direct knockoff.

9

But even assuming, for the sake of argument, that the Court needs to review the *Polaroid* factors one-by-one, the Court must reach the same conclusion that the Defendants' Mark is likely to be confused with the Plaintiffs'.

As in the analysis of the *Polaroid* factors in *Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F. 2d 254 (2d Cir. 1987) all factors point in favor of a finding of "likelihood of confusion" as a matter of law where the primary element of the Mark ("PEGASUS" in Mobil, "ZAFEM" here) is at issue. That is the same conclusion this Honorable Court reached when a Defendant used a variety of assumed names with the key word "KALMAR" in their name, *J.T. Kalmar GMBH v. KLS Lighting Co., Ltd.*, Case No. 17-cv-7505 (E.D.N.Y. Aug. 12, 2019)(unpublished)(copy of decision at Exh. W of the Gottesman Affirmation). Here too, the Court should find that the misuse of the ZAFEM element meets each of the *Polaroid* factors.

We review each of them briefly:

1. The ZAFEM element of the mark is inherently distinctive and has acquired marketplace recognition since 2011 in the Eastern District of New York and throughout the United States, and the Haitian/Caribbean music scene.

2. The word "ZAFEM" captures the visual, aural and overall commercial impression of the Plaintiffs' Mark and intellectual property that has been in use since at least 2011.

3. The products offered by both the Plaintiffs and Defendants are aimed at the Haitian music scene in the United States and globally.

4. The Defendants themselves admit that they have and intend to "bridge the gap" through further infringement of the Plaintiffs' Mark.

5. There is actual confusion.

6. The Defendants ongoing infringement – including after being explicitly enjoined from doing so – shows that their use of the Mark, and intended use of the Mark in the future has been and is continuing to be done in bad faith.

7. While in this context there is not necessarily a "quality" issue, certainly the typical consumer would associate solely the term "Zafem" with the product offerings.

Bottom line is that the even assuming the Honorable Court were inclined to re-open this case for procedural reasons, doing so would be a gigantic waste of judicial resources to litigate a defense of no likelihood of confusion that on its face will fail. Since there is no meritorious defense of prior use, the Defendants respectfully submit that the Honorable Court should deny the Motion to Set Aside the Judgment.

IV. **Meritorious Defense:**
**Bad Faith Procurement of Mark**

The Defendants next argue that they have a meritorious defense based on the Plaintiffs' alleged procurement of the Mark in bad faith, Defendants' Memo at 35-1, pp. 12-13 (pdf pages 15-16). This is a factual argument that "*Zafem* had already achieved wide public recognition and commercial success well before Plaintiff's application for registration." Memo in Support at p. 12.

As shown above, that is untrue as a matter of fact. The Plaintiffs registered "ZAFEM BAND" with the Kings County Clerk in 2011 and have been performing under that name since 2011. By contrast, the Defendants explicitly admit that they "adopted the name *Zafem* in 2016", Ceide Aff. at ECF 35-2, ¶ 8.

Bottom line is that even assuming the Honorable Court were inclined to re-open this case for procedural reasons, doing so would be a gigantic waste of judicial resources to litigate a "defense" of bad faith, that on its face will fail. Since there is no meritorious defense of bad faith, the Defendants respectfully submit that the Honorable Court should deny the Motion to Set Aside the Judgment.

11

### V. Lack of Prejudice and Other Arguments

The Plaintiffs have litigated this matter in good faith for more than a year. Plaintiffs kept the Defendants apprised of the case's progress through pre-litigation outreach, service of the Order to Show Cause at the start of litigation, actual service of process, and continued good faith participation in this litigation.

By contrast, the Defendants have intentionally, willfully and deliberately elected to Default on some theory that it would benefit them to do so. Even after enforcement began and they admitted they knew about this Judgment, they continued to ignore the Court. Only after the threat of sanctions was made, the Defendants appeared. The Counsel that they had retained waited *weeks* to appear and Set Aside the Default. That is not an innocent mistake with no prejudice.

Practically speaking, the Defendants' non-cooperation **has** "provide[d] greater opportunity for fraud and collusion", *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983) quoting 10 C. Wright A. Miller and M. Kane, FEDERAL PRACTICE AND PROCEDURE: CIVIL, § 2693 at 477-93 (1983)(cited by the Defendants in their Memo at p. 14). Defendants' willful defiance of this Court by the filing of the three new bogus Trademark Applications with the USPTO and the registration of a new Company *after the Defendants knew about the Judgment and permanent injunction* was enabled by this dilatory behavior.

That sort of bad-faith abuse of the judicial system is the exact sort of 'fraud' that has prejudiced and will prejudice the Plaintiffs. The new filings and creation of the new LLC complexifies the case, expands the scope of the litigation and provides the Defendants the ability to engage in further infringement. And the Defendants did so in an underhanded way. The Plaintiffs only learned of the bogus filings because they happened to see a posting on a Caribbean-music-based social site, *see* Gottesman Affirmation at Exhibit Q.

Under such circumstances, bending the rules in favor of Defendants who have abused and continue to abuse the legal system is unwarranted and the Plaintiffs have and will continue suffer prejudice if this abuse is allowed to continue.

### F. Conclusion

For these reasons, the Moving Defendant respectfully submits that the Motion to Set Aside the Judgment should be denied and this matter should move forward with enforcement, including full compliance with the permanent injunction as will be discussed more fully in the separately filed Motion for Sanctions.

DATED: **November 2, 2024**

RESPECTFULLY SUBMITTED,

By: _____

Baruch S. Gottesman, Esq.
GOTTESMAN LEGAL PLLC
11 Broadway, Suite 615
New York, NY 10004
Phone: (212) 401-6910
bg@gottesmanlegal.com
*Counsel for Ranphee Store*

## CERTIFICATE OF SERVICE

        I hereby certify that on November 2, 2025, simultaneous with the filing of this Submission, a copy of this submission was served upon counsel for all Appearing Parties using the court's CM/ECF system which will provide a notice of electronic filing to all Counsel of Record who have consented in writing to accept this notice of service of this document by electronic means.