UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
J.T. KALMAR GMBH,                                           :       **MEMORANDUM**
                                  Plaintiff,                :       **DECISION AND ORDER**
                                                            :
           - against -                                      :       17-cv-7505 (BMC)
                                                            :
KLS LIGHTING CO. LTD., f/k/a KALMAR                         :
LIGHTING CO. LTD., f/k/a SHANGHAI                           :
KALMAR LIGHTING CO. LTD.,                                   :
                                                            :
                                  Defendant.                :
----------------------------------------------------------- X

**COGAN**, District Judge.

      This is a clear-cut case of trademark infringement in which former employees of plaintiff set up a competing lighting fixture company using plaintiff's mark and advertising to obtain substantial sales. After initially appearing through counsel and engaging in some early steps of litigation, the corporate defendant's counsel withdrew. Defendant was repeatedly warned that, as a business entity, if it did not cause new counsel to appear on its behalf, its answer would be disregarded and it would be held in default. See Estate of Ellington ex rel. Ellington v. Harbrew Imports Ltd., 812 F. Supp. 2d 186, 192 (E.D.N.Y. 2011). Defendant ignored those warnings and the Clerk duly entered the default.

      The case is now before this Court on plaintiff's motion for a default judgment. Defendant has not opposed, and aside from the factual allegations in plaintiff's amended complaint being deemed true, plaintiff has introduced solid evidence of the amount of sales proceeds that defendant received through the misuse of plaintiff's intellectual property. Plaintiff has also demonstrated the need for an injunction against further infringement. Accordingly, plaintiff's motion is granted.

**BACKGROUND**

The following facts are amply supported by the allegations in the amended complaint and the evidence submitted with plaintiff's motion for a default judgment.

Plaintiff J.T. Kalmar GmbH is an Austrian company located in Vienna. The amended complaint contains non-conclusory factual allegations establishing that it, either itself or through subsidiaries, is a world leader in the lighting fixtures industry, including all phases of design, manufacture, custom and stock installation, consulting, maintenance, and service of lighting solutions and applications. Its products and services cover everything from hotel ballrooms to cruise ships and private residences. It has been in business for well over 100 years and has acted in the United States market since at least 1954, using trademarks that it had used in Europe since at least 1918. It registered its trademark in the United States in 1917, and aside from a short gap period due to inadvertent non-renewal, it has maintained that registration. It advertises and sells widely across several internet websites, among other means of distributing its products and services like showrooms.

In about 2015, three former employees of Kalmar set up a competing business entity, the defendant here, which went through several name changes: Shanghai Kalmar Lighting Co. Ltd., then Kalmar Lighting Company Ltd., then KLS Lighting Company Ltd. At least as recently as 2017, defendant was commonly using some d/b/a with the name "Kalmar" in it. It solicited and sold to, at least, plaintiff's potential customers. Defendant's website referred to it as "Kalmar Lighting" and described itself as "one of the world's leading specialists in custom designed and manufactured solutions for architectural lighting projects. Our know-how is based on decades of intensive, on-going development as well as partnership with leading architects and planners. Lighting concepts range from classic chandeliers to contemporary decorative luminaires and functional lighting solutions." This language was lifted almost *verbatim* from plaintiff's website.

2

Defendant also attributed some of plaintiff's projects to itself; used plaintiff's product imagery; and asserted, without basis, that defendant held copyrights to that imagery.

Plaintiff's amended complaint asserts six claims for injunctive relief and damages: (1) Federal Trademark Infringement, False Designation of Origin and Unfair Competition (15 U.S.C. §§ 1114 and 1125(a)); (2) False Advertising in Violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)); (3) Deceptive Acts in Violation of New York General Business Law (N.Y. Gen. Bus. Law § 349); (4) Trademark Dilution in Violation of New York General Business Law (N.Y. Gen. Bus. Law § 360.1-L); (5) Trademark Infringement in Violation of New York Common Law; and (6) Unfair Competition under New York Common Law.[1]

## DISCUSSION

In the context of a motion for default judgment, a court accepts the well-pleaded allegations of a complaint pertaining to liability as true. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992). "Thus, the court must look to the allegations of the complaint regarding liability to determine whether plaintiff has adequately pled its claims." Philip Morris USA, Inc. v. Jackson, 826 F. Supp. 2d 448, 451 (E.D.N.Y. 2011).

Here, plaintiff's complaint states a claim for relief under the Lanham Act. Plaintiff's first two claims are for trademark infringement, false designation of origin, and unfair competition under Sections 32 and 43(a)(1)(A) of the Lanham Act. "Courts employ substantially similar standards when analyzing claims" for trademark infringement and false designation of origin (that is, unfair competition) under Sections 32 and 43 of the Lanham Act. Van Praagh v. Gratton, 993 F. Supp. 2d 293, 301 (E.D.N.Y. 2014). Thus, a single standard will apply to both of plaintiff's claims for relief.

---

[1] Since the Court finds that plaintiff can obtain complete relief under federal law, it dismisses plaintiff's New York state law claims without prejudice as duplicative. See Fed. R. Civ. P. 12(f).

"The Lanham Act prohibits the use in commerce, without consent, of any 'registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods,' in a way that is likely to cause confusion." Time, Inc. v. Petersen Pub. Co. L.L.C., 173 F.3d 113, 117 (2d Cir. 1999) (quoting 15 U.S.C. § 1114(1)(a)). To succeed on a claim for trademark infringement under the Lanham Act, a plaintiff must show two things: (1) that "it has a valid mark entitled to protection," and (2) that "the defendant's use of [the mark] is likely to cause confusion." Id. (internal quotation marks and citations omitted).

As for the first element, registered trademarks are entitled to a presumption of validity. See 15 U.S.C. § 1057(b) ("A certificate of registration of a mark . . . shall be prima facie evidence of the validity of the registered mark . . . ."); CJ Prod. LLC v. Snuggly Plushez LLC, 809 F. Supp. 2d 127, 151 (E.D.N.Y. 2011). Here, plaintiff's mark is registered with the USPTO, and is therefore deemed valid and entitled to protection for the purposes of this motion.

With respect to the second element, courts in the Second Circuit consider the factors articulated in Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492, 495 (2d Cir. 1961), to determine whether a defendant's use of plaintiff's valid mark is likely to cause confusion. Time, Inc., 173 F.3d at 117. The Polaroid factors are: (1) "the strength of the mark"; (2) "the degree of similarity between the two marks"; (3) "the proximity of the products"; (4) "the likelihood that the prior owner will bridge the gap"; (5) "actual confusion"; (6) "the defendant's good faith in adopting its mark"; (7) "the quality of the defendant's product"; and (8) "the sophistication of the buyers." Id. (internal quotation marks and citations omitted). "No single factor is dispositive, nor is a court limited to consideration of only these factors." Brennan's, Inc. v. Brennan's Rest., L.L.C., 360 F.3d 125, 130 (2d Cir. 2004) (quoting Polaroid, 287 F.2d at 495).

No detailed analysis of the Polaroid factors is necessary, as is usually the case when there is an outright appropriation of a trademark to market products in the identical industry. It is plain that defendant thought it could simply steal the good-will of plaintiff's well-established "Kalmar" trademark, as well as its promotional materials, and fool purchasers into thinking that they were dealing with the real Kalmar. The likelihood of confusion is more than obvious; it is the very *raison d'etre* for defendant's tortious conduct. Plaintiff's motion proves every element of federal trademark infringement and false advertising required under the Lanham Act.

Damages turn, in part, on whether the infringement is "willful." There can be no question of willfulness here – the misappropriation of plaintiff's mark is so brazen, undertaken by a company comprised of plaintiff's former employees, and coupled with defendant's initial decision to appear in and then abandon its defense. These are more than sufficient evidence to demonstrate willfulness. See Rolls–Royce PLC v. Rolls–Royce USA, Inc., 688 F. Supp. 2d 150, 157 (E.D.N.Y. 2010).

Various measures of damages are available for willful Lanham Act violations. Here, plaintiff seeks defendant's profits from sales of lighting fixtures. Plaintiff has obtained non-party discovery from defendant's bank showing that defendant received at least $662,329.63 from purchasers of lighting goods and services from July 2016 through July 2018, the period in which it was using plaintiff's mark and intellectual property.

Of course, gross revenue is not the same as profit. But that is not plaintiff's problem. It was defendant's burden to show net profit if it chose to defend on that basis. See 15 U.S.C. § 1117(a). By defaulting in the action, defendant has waived the right to assert any costs or deductions from the revenue that it received. This seems only fair considering that plaintiff cannot know if it has uncovered the entirety of defendant's sales; it may well be that defendant

5

has other bank accounts or has distributed proceeds of other sales. Defendant's default has deprived plaintiff of any opportunity to fully ascertain the extent of the profits that defendant realized, and defendant does not get any benefit of the doubt for having done that.

In addition, an infringement as bold as this one cries out for injunctive relief. Both irreparable harm and the inadequacy of a damage remedy standing alone are apparent. There is nothing stopping this defendant from continuing its infringement with other customers or through other channels except this Court's intervention.

Finally, because the infringement was clearly willful, plaintiff is entitled to reasonable attorneys' fees and costs in prosecuting this case to protect its trademark. It has submitted detailed time records showing fees charged of $182,043.00 and costs of $787.80. The fees are comprised of just over 410 hours, with rates ranging from $650/hour for an experienced partner down to $330 for a junior associate. The time is reasonable in this three-year old case that had a defendant that was sometimes in and sometimes out. The rates may be a bit above the middle for intellectual property litigation in this district, see Mun. Credit Union v. Queens Auto Mall, Inc., 126 F. Supp. 3d 290, 300 (E.D.N.Y. 2015) (finding $500 per hour to be a reasonable hourly rate for lead counsel in a trademark infringement case and $400 per hour to be reasonable for an associate-type counsel), but are reasonable considering the high quality of the work, the fact that plaintiff is a foreign client that may have required extra time and attention, and the fact that non-party discovery had to be undertaken to prove plaintiff's damage case.[2]

---

[2] These rates should not be compared to those awarded in unrelated fields of litigation, like under 42 U.S.C. § 1983 or the Fair Debt Collection Practices Act. Those kind of consumer or individual statutory schemes present an entirely different market than a commercial or intellectual property case. See Mun. Credit Union, 126 F. Supp. 3d at 299-300.

6

## CONCLUSION

Plaintiff's motion for a default judgment is granted. Judgment, including injunctive relief, will be entered separately pursuant to Federal Rule of Civil Procedure 58.

**SO ORDERED.**

Digitally signed by Brian M. Cogan
_____
U.S.D.J.

Dated: Brooklyn, New York
August 12, 2019