Kelly Paul Peters
Scoolidge Peters Russotti & Fox LLP
2 Park Avenue, 20th Floor
New York, NY 10016
Tel: 212-729-7708
kelly@sprfllp.com
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **WISS JOSEPH**; and **MARIE JOSEPH**,<br><br>Plaintiffs,<br><br>~ *versus* ~<br><br>**DENER CEIDE**;<br>**DENER CEIDE PRODUCTIONS, INC.**; "**ZAFEM**";<br>**ZAFEMUSIC.COM**; and<br>**ZAFEMEPK.COM**,<br><br>Defendants. | **Case No.  1:24-cv-6572** |

**DEFENDANTS' MEMORANDUM OF LAW**
**IN REPLY AND FURTHER SUPPORT OF THEIR MOTIONS**
**TO STAY ENFORCEMENT OF AND TO SET ASIDE**
**THE DEFAULT JUDGMENT**

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................................ 1

II.  ARGUMENT IN REPLY .................................................................................................... 2

    a.  Plaintiffs Do Not Dispute that Defendants' Use of Zafem Was Not a Willful Infringement of Plaintiffs' Mark. ..................................................................................... 2

    b.  Without a Stay of Enforcement, Defendants Will Suffer Irreparable Harm and Prejudice, while a Stay Will Impose No Meaningful Prejudice on Plaintiffs ................ 4

    c.  Plaintiff's Claims of Bad Faith and Contempt of the Default Judgment are Hyperbolic and Fail to Consider Zafem's Uniqueness as a Renowned Haitian Musical Group. ................................................................................................................................ 5

CONCLUSION ............................................................................................................................ 8

# TABLE OF AUTHORITIES

**Cases**

American Alliance Ins. Co. v. Eagle Ins. Co., 92 F.3d 57 (2d Cir. 1996) ........................... 1

Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmbH, No. 14-CV-585 AJN, 2015 WL 5051769 (S.D.N.Y. Aug. 26, 2015), aff'd, 836 F.3d 153 (2d Cir. 2016), and aff'd, 843 F.3d 48 (2d Cir. 2016) ................................................................................ 4

Davis v Musler, 713 F2d 907 (2d Cir. 1983) ....................................................................... 1

Enron Oil Corp. v. Diakuhara, 10 F.3d 90 (2d Cir. 1993) .................................................. 1

Green Mountain Holdings (Cayman) Ltd. v. Eddington Link, LLC, 2024 WL 4209722 (E.D.N.Y. Aug. 16, 2024) ................................................................................................ 6

Meehan v Snow, 652 F2d 274 (2d Cir. 1981) ...................................................................... 1

New York ex rel. Schneiderman v Actavis PLC, 787 F.3d 638 (2d Cir. 2015) .................. 4

Wagstaff-EL v Carlton Press Co., 913 F2d 56 (2d Cir. 1990) ............................................ 3

**Statutes**

15 U.S.C. § 1117(c) .............................................................................................................. 3

I.      **INTRODUCTION**

This Reply is submitted in further support of Defendants' motion under Rules 55(c) and 60(b) to vacate the Default Judgment, and for a stay of its enforcement under Rule 62(b), pending determination of that motion. See ECF 35 and 36, respectively.

It is well established that the federal courts prefer to resolve disputes on their merits rather than by default. *See* American Alliance Ins. Co. v. Eagle Ins. Co., 92 F.3d 57, 61 (2d Cir. 1996); Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993). "Defaults are not favored, particularly when the case presents issues of fact, and doubts are to be resolved in favor of a trial on the merits." Meehan v. Snow, 652 F2d 274, 277 (2d Cir. 1981). "[T]he extreme sanction of a default judgment must remain a weapon of last, rather than first, resort." Id. *See also*, Davis v. Musler, 713 F2d 907, 916 (2d Cir. 1983).

Without repeating the full arguments set forth in Defendants' original motion papers—which are respectfully incorporated by reference herein—Defendants highlight several key points that remain uncontroverted by Plaintiffs and that, in equity, warrant vacatur of the Default Judgment: (1) the alleged infringement was not willful; (2) Plaintiffs would suffer no meaningful prejudice from having the matter decided on its merits; (3) the potential harm to Defendants is comparatively substantial, given that *Zafem* is an established musical group with contractual obligations, performing members, and countless fans who have already invested in upcoming shows; and (4) Plaintiffs' claims of bad faith and contempt are exaggerated and unsupported by the record.

For these reasons and those detailed further below, Defendants respectfully request that the Court set aside the Default Judgment so that this matter may be resolved on the merits.

## II.   ARGUMENT IN REPLY

### a. Plaintiffs Do Not Dispute that Defendants' Use of *Zafem* Was Not a Willful Infringement of Plaintiffs' Mark.

Defendants respectfully maintain that their use of the name *Zafem* does not constitute infringement, as it arose independently, reflects a common cultural Haitian Creole expression, and predates Plaintiffs' registration.

Defendants' use of the band name *Zafem* was, at most, coincidental, and not a deliberate infringement of Plaintiffs' tradename "Zafem World Entertainment". Crucially, Plaintiffs do not dispute that Defendants' adoption and use of the name *Zafem* was done openly and in good faith, before Plaintiffs registered their mark, and without any intent to infringe. Plaintiffs' repeated references to "willfulness" are directed only at the procedural default and not the underlying use of the name *Zafem*. There is no allegation, much less evidence, that Defendants ever acted with deliberate intent to exploit Plaintiffs' goodwill or deceive the public. Plaintiffs have not submitted a fact affidavit signed by the party plaintiff alleging infringement, let alone a willful infringement of their mark.  The record is entirely devoid of such proof, and this omission in Plaintiffs' opposition is telling. It confirms that the Court's prior finding of "willful" infringement, which served as the basis for the $1 million judgment, was founded on an incomplete and mistaken understanding of the underlying facts.

The unrefuted evidence submitted with Defendants' Motions paints a markedly different picture—one of artistic integrity, cultural heritage, and independent creation. In his affidavit, Mr. Ceide explains in detail how his inspiration for the band name *Zafem* emerged organically from his years performing with the legendary Haitian band *Tabou Combo* and their well-known song *"Kite m fè Zafem"*—a Creole expression meaning "Let

2

me do my thing." (*Ceide Aff.* ¶¶ 9-11*).* Contrary to Plaintiffs' claims that the word "Zafem" uniquely identifies their organization, the word *Zafem* is in fact part of the Haitian vernacular, a cultural idiom, not a commercial fabrication. (*Ceide Aff.* ¶9). Mr. Ceide's use of *Zafem* as his band's name was a reflection of that identity, not an act of infringement.

This narrative is inconsistent with any finding of willfulness and does not support the $1 million Default Judgment. The Lanham Act itself distinguishes between intentional, willful violations—which may warrant enhanced statutory damages ranging from $200,000 to $2 million per mark—and those, like this one, that are non-willful or undertaken in good faith, where equitable and compensatory remedies apply instead. *See* 15 U.S.C. § 1117(c). Here, the evidence demonstrates that Mr. Ceide's use of *Zafem*, was independent and rooted in cultural expression; and far from being a willful infringement. Plaintiffs offer no contrary proof.

Vacating the Default Judgment under these circumstances honors that well-established principle to resolve disputes on their merits and ensures that this case is decided on a complete record, not on procedural happenstance. These notions of equity and fairness were applied by the Second Circuit in its decision <u>Wagstaff-EL v Carlton Press Co.</u>, 913 F2d 56, 57 (2d Cir. 1990), where the Circuit Court upheld the District Court's decision to set aside the default judgment, finding that even though the defendant's "conduct upon receiving the complaint and summons 'was so nonchalant as to be willful'", the plaintiff's claims were "utterly unsupported" and the "calculation of damages was preposterous." The evidence now before the Court stands in clear contrast to any prior finding of willful infringement, which formed the basis for the $1 million judgment entered in this case. Even if liability were assumed, Plaintiffs provided no competent evidence justifying a $1 million

award. The amount appears arbitrary and punitive, rather than grounded in any showing of actual loss or statutory factors.

In sum, Defendants ask for nothing more than an opportunity to have their case heard on the merits, consistent with the equitable traditions of this Court and the broader interests of fairness and due process. For these reasons, Defendants respectfully request that the Default Judgment be set aside so that this matter may proceed on the merits.

b. **Without a Stay of Enforcement, Defendants Will Suffer Irreparable Harm and Prejudice, while a Stay Will Impose No Meaningful Prejudice on Plaintiffs**

Immediate enforcement of the Default Judgment will cause the Defendants severe irreparable harm and prejudice. A showing of irreparable harm is 'the single most important prerequisite' before a stay can be issued. Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmbH, No. 14-CV-585 AJN, 2015 WL 5051769 (S.D.N.Y. Aug. 26, 2015), aff'd, 836 F.3d 153 (2d Cir. 2016), and aff'd, 843 F.3d 48 (2d Cir. 2016). "Irreparable harm is injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." New York ex rel. Schneiderman v Actavis PLC, 787 F.3d 638, 660 (2d Cir. 2015) (internal quotations omitted.).

As set forth in the Affidavit of Dener Ceide, *Zafem* is not simply a band name—it is the identity of an internationally recognized Haitian musical group that has spent nearly a decade cultivating a following across the United States, Europe, and the Caribbean. More than fifteen professional musicians, technicians, and crew members (along with their families) depend on *Zafem's* ability to perform for their livelihood. See *Ceide Aff., generally*. The group's scheduled concerts also sustain local venues, promoters, production crews, and vendors who rely on these events for income. Enforcing the Default Judgment

4

would abruptly halt all these operations, inflicting immediate and irreparable harm not only on Defendants but on a broad community of innocent third parties. (*See Ceide Aff. ¶54*). This harm is not theoretical. Once Defendants' name, music, and performances are taken down from global platforms and canceled from tour schedules, that loss of reputation and momentum cannot be undone—even if this Court later vacates the Default Judgment.

By contrast, Plaintiffs identify no comparable injury that would result from maintaining the status quo pending resolution of the Rule 60(b) motion. They have offered no proof that Defendants' continued use of *Zafem* has caused them any measurable harm or that their ability to litigate this action on the merits is compromised. In fact, if anything, the widespread acclaim Mr. Ceide and his band have brought to the name *Zafem* enhances the recognition and value of Plaintiffs' claimed mark. *Zafem World Entertainment* remains a small, local entity with limited visibility, whereas Defendants' band *Zafem* has achieved international renown. Plaintiffs' position that they will be "prejudiced" by the continued success of the band is neither supported by evidence nor consistent with notions of equity.

Accordingly, the balance of hardships decisively favors granting a stay. Denying a stay would silence a major voice in Haitian music and irreparably disrupt the livelihoods of numerous individuals and their families. Staying or vacating the Default Judgment, by contrast, simply preserves the status quo while this Court addresses the merits of this case. Accordingly, the equitable path is to stay enforcement of the Default Judgment pending full and fair adjudication of this dispute.

 c. **Plaintiff's Claims of Bad Faith and Contempt of the Default Judgment are Hyperbolic and Fail to Consider Zafem's Uniqueness as a Renowned Haitian Musical Group.**

Plaintiffs' accusations that Defendants have acted in bad faith or in contempt of the Default Judgment are not only unfounded; they are divorced from the factual record. The

5

Default Judgment was entered on September 18, 2025, without Defendants' knowledge or participation. As established in Mr. Ceide's sworn affidavit, Defendants first learned of the judgment only after Plaintiffs' counsel emailed Mr. Ceide a copy of the decision on September 19, 2025. (*Ceide Aff.* ¶¶ 39–40). Until that moment, Defendants were unaware of this action, let alone that a million-dollar judgment and permanent injunction had been entered against them.

Once notified of the Default Judgment, Mr. Ceide acted promptly and in good faith. He immediately retained counsel and began the process of responding to the lawsuit, moving expeditiously to file the present motions to vacate the default and to stay enforcement; along with a proposed pleading. Courts consider the promptness with which a party moves to vacate a default; even a delay exceeding *a year* may be found reasonable if the movant acts diligently upon learning of the judgment. *See* Green Mountain Holdings (Cayman) Ltd. v. Eddington Link, LLC, 2024 WL 4209722, at 3 (E.D.N.Y. Aug. 16, 2024) (citing Wright v. Poole, 81 F. Supp. 3d 280, 290 (S.D.N.Y. 2014). In this case, there has been no meaningful delay, no obstruction, no disregard of this Court's authority—and certainly no prejudice to the Plaintiffs. The suggestion that Defendants "willfully ignored" or "defied" the Court's judgment is belied by the record.

Moreover, Plaintiffs' claims of "contempt" ignore the practical realities of Defendants' situation. *Zafem* is a professional touring band with performances scheduled many months in advance across multiple countries. Each show involves complex logistics—contracts with venues and promoters, rented equipment, travel arrangements, ticketing platforms, stage crews, and dozens of individuals who depend on those events for their livelihood. (See *Ceide Aff.* ¶¶ 54–55). To suggest that Mr. Ceide should have abruptly

6

canceled these commitments—without prior notice of the injunction and before retaining counsel—would not only be unreasonable, it would also impose severe financial and reputational harm on innocent third parties worldwide.

The undisputed facts show that Defendants did not willfully flout the Court's order; they simply had no meaningful opportunity to comply before learning of it. Since obtaining counsel, Defendants have acted transparently and diligently to seek the Court's guidance through proper channels. That conduct is the antithesis of bad faith.

Plaintiffs' hyperbolic assertions of bad faith are, therefore, an attempt to inflame rather than to inform. Their rhetoric of "contempt" and "defiance" collapses under the weight of the sworn evidence. The record shows conscientious artists who have built an internationally celebrated musical project and who have come before this Court respectfully seeking the opportunity to defend themselves on the merits. The Court should reject Plaintiffs' hyperbolic characterizations and evaluate Defendants' conduct in light of the genuine facts and the equitable realities of this case.

For these reasons, Defendants respectfully request that the motion to set aside the Default Judgment be granted.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court (i) vacate the Default Judgment pursuant to Rules 55(c) and 60(b), (ii) stay enforcement of the Judgment pending adjudication on the merits, and (iii) grant such further relief as the Court deems just and proper.

Dated: New York, New York
November 7, 2025

                              Respectfully submitted,

                              SCOOLIDGE PETERS RUSSOTTI & FOX LLP

                              By: /s/ Kelly Paul Peters
                              Kelly Paul Peters, Esq.
                              2 Park Avenue, 20th Floor
                              New York, NY 10016
                              Tel: (212) 729-7708
                              kelly@sprfllp.com

                              *Counsel for Defendants*