Kelly Paul Peters
Scoolidge Peters Russotti & Fox LLP
2 Park Avenue, 20th Floor
New York, NY 10016
Tel: 212-729-7708
kelly@sprfllp.com
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **WISS JOSEPH**; and **MARIE JOSEPH**,<br><br>Plaintiffs,<br><br>*~ versus ~*<br><br>**DENER CEIDE**;<br>**DENER CEIDE PRODUCTIONS, INC.**; "**ZAFEM**";<br>**ZAFEMUSIC.COM**; and<br>**ZAFEMEPK.COM**,<br><br>Defendants. | **Case No. 1:24-cv-6572** |

**DEFENDANTS' MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFF'S
ORDER TO SHOW CAUSE FOR SANCTIONS AND CONTEMPT**

## **TABLE OF CONTENTS**

I.  PRELIMINARY STATEMENT ................................................................................... 1

II. STATEMENT OF FACTS.......................................................................................... 1

III. ARGUMENT ............................................................................................................. 4

   a.  Defendants Have Acted in Good Faith and Are Using Their Best Efforts to Comply with the Court's Order. ...................................................................................... 4

   b.  Coercive Sanctions Are Unwarranted Because Plaintiffs Have Not Shown Harm or Prejudice. ........................................................................................................... 6

CONCLUSION............................................................................................................ 11

# TABLE OF AUTHORITIES

**Cases**

A Royal Flush, Inc. v. Arias, 855 F. App'x 23 (2d Cir. 2021) ............................................. 6

Gucci Am., Inc. v. Weixing Li, 768 F.3d 122 (2d Cir. 2014) .............................................. 4

King v Allied Vision, Ltd., 65 F.3d 1051 (2d Cir. 1995) ..................................................... 5

New York State Nat. Org. for Women v. Terry, 886 F.2d 1339 (2d Cir. 1989) ............. 6, 7

Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc., 369 F.3d 645 (2d Cir. 2004) .................................................................................................................... 7

Perez v. Danbury Hosp., 347 F.3d 419 (2d Cir. 2003) ....................................................... 4

## I. PRELIMINARY STATEMENT

Defendants Dener Ceide ("Ceide") and Dener Ceide Productions, Inc. ("Productions", and together with Ceide as the "Defendants"), by and through their undersigned counsel at the law firm of Scoolidge Peters Russotti & Fox LLP, respectfully submit this Memorandum of Law in opposition to Plaintiff's Motion brought by Order to Show Cause seeking coercive sanctions and charging Defendants with civil contempt (the "Order to Show Cause").

Defendants have acted promptly, transparently, and in good faith since first learning of the Default Judgment and the Court's directives. ECF No. 29 (the "Default Judgement"). Far from defying the Court, Defendants have made substantial efforts to understand and comply with the Order, under challenging logistical and professional circumstances inherent to their work as an internationally touring musical group.

The impact of the Default Judgment extends well beyond the Defendants themselves. It has disrupted the lives and work of countless individuals who depend on *Zafem's* continued operations and who benefit from the band's longstanding contributions to Haitian cultural life and community identity.

For these reasons and those detailed further below, Defendants respectfully request that the Court deny Plaintiffs' Order to Show Cause in its entirety.

## II. STATEMENT OF FACTS

Defendants incorporate by reference the factual background and supporting exhibits set forth in their pending Motions to Vacate the Default Judgment and to Stay Enforcement (ECF Nos. 35 and 36), as well as the Affidavit of Mr. Ceide, dated November

1

14, 2025 (the "Ceide Aff."), submitted concurrently with this opposition memorandum of law.

Defendant Dener Ceide first learned of the Default Judgment on September 19, 2025, the day after it was entered. Before that date, he had no knowledge of Plaintiffs, their alleged marks, or this action. Ceide Aff. ¶5. At all times following notice of the order, Defendants acted in good faith and made substantial efforts to comply with the Court's directives. Ceide Aff. ¶6.

The band known as "*Zafem*" was created in 2016 based on the Haitian Creole expression "zafem," a common cultural phrase meaning "my business" or "my affair." Ceide Aff. ¶8. The word is widely used throughout Haitian society and appears in numerous business names and artistic works, including longstanding uses by the well-known Haitian group *Tabou Combo*, who are affiliated with "Zafem Records," "Zafem Inc." Ceide Aff. ¶¶ 9-12. See Exhibit B. The name of the band originated independently from these cultural and linguistic traditions and without any connection to Plaintiffs.

Over the years, *Zafem* has become a large musical operation involving multiple performers, sound engineers, promoters, venue operators, and other third parties whose livelihoods depend on scheduled performances. Ceide Aff. ¶19. Concerts are typically booked months in advance, and promotional activity—including advertising, ticketing, and online marketing—is largely controlled by promoters rather than Defendants. For shows that had already been scheduled and promoted prior to the Default Judgment, immediate cancellation or removal of promotional materials was not feasible without causing significant financial and professional harm to numerous stakeholders. Ceide Aff. ¶20.

All future bookings made after the Default Judgment are conducted under Mr. Ceide's personal name and not under "Zafem." Ceide Aff. ¶21. Defendants began the process of rebranding and engaged a trademark-branding company to identify new names that may comply with the injunction. Ceide Aff. ¶27. Trademark filings were submitted solely to explore permissible alternatives and not to evade the Court's order. Defendants intend to continue rebranding until a compliant artistic identity is established. At no time did Defendants seek to confuse consumers, profit from Plaintiffs' alleged marks, or act in defiance of the injunction.  Ceide Aff. ¶¶27-29.

There is no evidence in the record that Plaintiffs have suffered financial harm or any cognizable prejudice arising from Defendants' conduct. Plaintiffs have not demonstrated active business operations, performances, or a meaningful presence in the Haitian music industry that could have been harmed. Ceide Aff. ¶¶30-31. Defendants deny any infringement and did not select the name "Zafem" to imitate or benefit from Plaintiffs. Ceide Aff. ¶32.

Defendants and their associated musical endeavors generate modest income, and Defendants lack the financial means to satisfy the $1 million statutory award included in the Default Judgment. Ceide Aff. ¶33. The order has already imposed severe hardship not only on Defendants but also on the many individuals and communities connected to the band.

Zafem has played a significant cultural role in Haiti for many years. The group has collaborated extensively with Haiti's National Bureau of Ethnology ("BNE"), a government institution dedicated to preserving the nation's cultural heritage. Since 2023, the Zafem song "Dyaman Nan Bidonvil" has been adopted as an anthem by both the BNE

and the Haitian Department of Education, and its lyrics are used to promote unity, empathy, and the preservation of Haitian Creole language among younger generations. Ceide Aff. ¶¶36-39. According to the director of the BNE, the group cannot be removed from Haiti's cultural archives because it has already become an established part of Haitian artistic history. Ceide Aff. ¶41.

The Default Judgment has had wide-ranging consequences extending beyond the parties, affecting contracted third parties and disrupting cultural and educational institutions that rely on *Zafem's* work. Defendants remain committed to complying with all Court orders, and any challenges identified by Plaintiffs arise from logistical and practical constraints—not willful disobedience.

### III.   ARGUMENT

Civil contempt requires three elements: (1) a clear and unambiguous order; (2) clear and convincing proof of non-compliance; and (3) the defendant has not diligently sought to comply in a reasonable manner. Perez v. Danbury Hosp., 347 F.3d 419, 423–24 (2d Cir. 2003); Gucci Am., Inc. v. Weixing Li, 768 F.3d 122, 142 (2d Cir. 2014). This lawsuit and the resulting judgment are recent developments for Defendants. Since learning of the Default Judgment, Defendants have worked diligently to understand and meet its requirements.

### a. Plaintiffs Have Failed to Produce Clear and Convincing Proof of Non-Compliance.

Plaintiffs have not met their burden of establishing non-compliance by clear and convincing evidence. "In analyzing a contempt order, [the Courts] recognize that such an order is a "potent weapon,", to which courts should not resort "where there is a fair ground of doubt as to the wrongfulness of the defendant's conduct," King v Allied Vision, Ltd., 65

4

F.3d 1051, 1058 (2d Cir. 1995) (quoting, California Artificial Stone Paving Co. v Molitor, 113 US 609, 617, (1885)). To obtain contempt sanctions, Plaintiffs must present clear, definite, and competent proof that Defendants violated a clear and unambiguous order. *See* Id.

Plaintiffs have offered no such evidence. Their motion relies almost entirely on speculation, screenshots stripped of context, and conclusory assertions by Plaintiff's counsel that lack foundation and do not demonstrate that Defendants engaged in any willful or material violation of the Default Judgment. Plaintiffs identify no evidence showing that Defendants used the "Zafem" name for any *new* bookings after the judgment, nor do they address the extensive third-party contractual obligations, preexisting promotional materials, or logistical constraints that made immediate removal impossible. At most, Plaintiffs point to residual online content and evidence of Defendants' ongoing efforts to rebrand their musical project in a compliant manner. In short, the record does not satisfy the demanding standard required to impose contempt sanctions.

    b. **Defendants Have Acted in Good Faith and Are Using Their Best Efforts to Comply with the Court's Order**

The record shows that Defendants are using their best efforts to comply with the Court's order under very complicated circumstances. For a finding of civil contempt, Plaintiffs must prove that the defendants have not diligently sought to comply with the Court's order in a reasonable manner. Perez, 347 F.3d 419 at 423–24.

As detailed in Mr. Ceide's affidavit, *Zafem* is a touring band with numerous live performances booked months in advance, each involving extensive planning, contractual financial commitments, and coordination with third parties. Defendants cannot readily cancel scheduled performances or control all related marketing, ticketing, and promotional

5

activities. Immediate cancellation of these events would have inflicted widespread financial and reputational harm not only on Defendants but on venue operators, crew members, promoters, and fans.

Defendants have nonetheless taken steps to ensure that future performances comply with the Court's directives. Mr. Ceide has ceased booking new performances under the *Zafem* name and is appearing solely under his personal name in future performances. Mr. Ceide also understood that rebranding was required and has taken active steps toward that goal.

Notably, Defendants are working with a company to assist with rebranding and registering new names with the USPTO. The registrations referred to in Plaintiffs' papers were made in a good faith effort to comply with the Court's Order—not to evade or disregard it. Filing for such trademarks does not in and of itself evidence contempt for the Court's orders, nor can it be said that it causes harm to the Plaintiffs.

Because Defendants have acted in good faith and are using their best efforts to comply with the court's order, the Court should deny Plaintiffs' application for a finding of civil contempt and sanctions.

c. **Coercive Sanctions Are Unwarranted Because Plaintiffs Have Not Shown Harm or Prejudice.**

When imposing coercive sanctions, a court should consider (1) the character and magnitude of the harm threatened by the continued contumacy, (2) the probable effectiveness of the sanction in bringing about compliance, and (3) the contemnor's financial resources and the consequent seriousness of the sanction's burden. New York State Nat. Org. for Women v. Terry, 886 F.2d 1339, 1352–53 (2d Cir. 1989); A Royal Flush, Inc. v. Arias, 855 F. App'x 23, 25–26 (2d Cir. 2021).

6

Where a monetary sanction is payable to the opposing party, that party must show actual proof of loss to justify the award. *See* Terry, 886 F.2d at 1353; *see also* Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc., 369 F.3d 645, 658 (2d Cir. 2004). In addition, a contemnor may be excused from a monetary sanction if it lacks the financial capacity to comply. Paramedics, 369 F.3d at 658.

Plaintiffs have suffered no actual harm as a result of Defendants' conduct. Indeed, Plaintiffs have yet to provide any sworn testimony, affidavit, or other evidence showing harm caused by Defendants' use of the *Zafem* name. Plaintiffs also maintain no meaningful public or online presence and have provided no evidence of lost opportunities, market confusion, or any tangible damage stemming from Defendants' actions.

Defendants are already facing a $1 million Default Judgment, which was procured by Plaintiffs without Defendants' participation in this proceeding. Although Defendants have a pending motion to set aside the Default Judgment (See ECF 36), until such time that this motion may be granted, they are using their best efforts to comply with the Court's directives.

Defendants lack the financial capacity to satisfy the $1 million statutory Default Judgment, and the injunction has further constrained their ability to earn income. Even before considering additional coercive sanctions, the existing judgment has substantially hindered Defendants' ability to perform, to market their music, to support their band members and families, and to meet existing contractual obligations.

The Default Judgment has also impaired Defendants' ability to maintain their artistic identity. Defendants were forced to initiate a complete rebranding effort—engaging trademark specialists, exploring permissible naming alternatives, and restructuring how all

7

future performances are booked and promoted. This process has caused substantial interruption to Defendants' operations and has created public confusion, lost promotional momentum, and diminished goodwill cultivated over nearly a decade.

In addition to these operational and financial harms, the judgment has inflicted significant cultural and reputational damage. *Zafem* plays a unique and well-documented role in Haitian cultural life. The band collaborates with Haiti's National Bureau of Ethnology (the BNE), contributes to the preservation of Haitian heritage, and has produced a song adopted by both the BNE and the Haitian Department of Education as a cultural and educational anthem. *See* Dener Aff. at ¶18, 38. The injunction threatens these longstanding contributions and has already caused uncertainty within Haitian institutions that rely on *Zafem's* work for cultural programming, language education, and community uplift.

Zafem's impact on Haitian culture was underscored in a letter from Director Jean Erol Josué, of the BNE, dated November 13, 2025, written in support of *Zafem's* continued existence. That letter states the following:

To:  ZAFEM GROUP
Subject:  Statement in Support of the Zafem Group

> *The National Bureau of Ethnology (BNE) wishes to express its support for the Haitian musical group Zafem, whose role in promoting and enhancing contemporary Haitian culture is recognized both within Haiti and throughout the diaspora.*
>
> *We acknowledge the decision of a New York district court ordering the group to cease using the name "Zafem" for commercial purposes and to pay damages. However, it is important to distinguish the legal and commercial matters from the cultural and patrimonial value of this group.*
>
> *Since its founding in 2019 by Dener Ceide and Reginald Cange, Zafem has created a space where the tradition of konpa engages in dialogue with Afro-Caribbean influences and world music. Their artistic approach exemplifies a process of dynamic cultural transmission, in which Haitian*

8

*musical heritage is renewed while remaining deeply routed in the national identity.*

*The Creole term "Zafem", chosen as the group's artistic identity, is profoundly symbolic: it evokes strength, perseverance, and collective spirit, values inherent in Haitian culture and popular music. In this sense, both the work and the name of Zafem contribute to the continuity and dissemination of Haitian cultural heritage, beyond commercial concerns.*

*The term "Zafem", as adopted by the group, goes beyond its nominal dimension: it represents strength, perseverance, and collective spirit, core values in Haitian history and culture. This designation, together with the group's artistic trajectory, constitute a vehicle of cultural continuity and a positive influence on the diaspora and internation audiences.*

*The BNE further emphasizes that the protection and promotion of Haitian cultural heritage also involve supporting those who perpetuate it through contemporary creation, and that the name "Zafem" embodies a symbol of this ongoing cultural continuity.*

*Supporting this group is to acknowledge the vitality of our music and affirm that Haitian culture continues to reimagine itself and radiate beyond its borders. Yet support does not imply disregarding legal realities: prudence, lucidity, and openness to dialogue are necessary for Zafem's cultural legacy to continue unfolding in accordance with established rules. Even within this constrained framework, the group's work remains a living act of scholarship and cultural diplomacy, serving the attention and respect of all who value the richness of our national heritage.*

*This statement is issued so that the Zafem Group may present it before any relevant authority or to whom it may concern, as an official testimony of its cultural and patrimonial value.*

*With our distinguished regards.*

*/S/ JEAN EROL JOSUÉ*
Director, National Bureau of Ethnology

(BNE)

In similar regards, by official Attestation by the by the Ministere De L'Education Nationale Et De La Formation Professionnelle of the Republique D'Haiti, (i.e. the Ministry

9

of National Education and Vocational Training of the republic of Haiti, or "MENFP"), made on November 14, 2025, and signed by the Minister of Education, the Hon. Augustin Antoine, the MENFP recognized *Zafem* for its contributions to Haitian culture and education. See Ceide Aff. at Exhibit E[1]. Specifically, said Attestation states the following:

> *The Ministry of National Education and Vocational Training (MENFP) hereby certifies that one of the songs by the musical group Zafem as been included in the Baccalaureate examinations, 2023 session.*
>
> *The inclusion of a song in the official Baccalaureate examinations is subject to strict and rigorous criteria, based on the literary quality, linguistic richness, cultural relevance, and educational value of the work. Tehe selection of a song by Zafem thus reflects institutional recognition of the importance of its contribution to the country's intellectual, linguistic, and cultural heritage.*
>
> *Baded precisely on the literary and aesthetic value of Dener CEIDE's text, "Dyaman nan bidonvil," taken as an example, the MENFP recognizes that the artistic work of the Zafem group is of great interest to the academic training of students. This text is an important contribution to the promotion of Haitian Creole and the enrichment of national culture.*
>
> *This certificate is issued for all legal purposes.*
>
> *Done in Port-au-Prince, November 24, 2025.*
>
>                                 */s/Augustin ANTOINE*
>                                 *Minister*
>                                 *[Seal]*

It is evident that *Zafem* is far more than a musical group; they hold generational significance within Haitian culture, enjoy the recognition and support of both the BNE and MENFP, and are regarded as an essential part of Haiti's cultural fabric.

---

[1] This Exhibit E includes the original copy in French along with an English version translated via Google Translate.

In sum, the Default Judgment is already inflicting profound professional, financial, and cultural harm—harm that extends not only to Defendants but also to third parties, band members, contractors, and notable segments of the Haitian community. Under these circumstances, additional coercive sanctions would serve no remedial purpose and would function only as punishment, contrary to the principles governing civil contempt.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' Order to Show Cause for sanctions and civil contempt and grant such further relief as the Court deems just and proper.

Dated: New York, New York
November 14, 2025

Respectfully submitted,

SCOOLIDGE PETERS RUSSOTTI & FOX LLP

By: /s/ Kelly Paul Peters
Kelly Paul Peters, Esq.
2 Park Avenue, 20th Floor
New York, NY 10016
Tel: (212) 729-7708
kelly@sprfllp.com

*Counsel for Defendants*