UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- X
WISS JOSEPH and MARIE JOSEPH,

                             Plaintiffs,

            - against -

DENER CEIDE, DENER CEIDE
PRODUCTIONS, INC., "ZAFEM",
ZAFEMUSIC.COM, and ZAFEMEPK.COM,

                            Defendants.
---------------------------------------------------------- X

**MEMORANDUM DECISION AND ORDER**

24-cv-6572 (BMC)

**COGAN**, District Judge.

This trademark case is before the Court principally on defendants' motion under Rules 55 and 60(b) of the Federal Rules of Civil Procedure to set aside a default judgment, and to stay enforcement of the judgment pending determination of their motion. The default judgment enjoined defendants from using plaintiffs' trademark and awarded plaintiffs statutory damages in the amount of $1 million. Plaintiffs, in turn, move for contempt, contending that defendants are violating the injunction contained in the final judgment. For the following reasons, defendants' motion to vacate is conditionally granted, their motion to stay is partially granted, and the ruling on plaintiffs' motion for contempt is deferred pending defendants' compliance with the conditions for vacating the default.

## BACKGROUND

Plaintiffs are the owners of the registered mark bearing the text "Zafem World Entertainment." Plaintiffs registered the mark in 2021 after allegedly using it for nearly a decade to promote concerts of Haitian-American music, dances, and related entertainment events. Defendant Dener Ceide is the individual sole owner of corporate defendant Dener Ceide

Productions, Inc., and the founder of a Haitian musical group known as "Zafem" (collectively, "defendants").

Plaintiffs first brought their trademark infringement action against defendants on September 18, 2024. After plaintiffs had some initial trouble serving defendants, Mr. Ceide was personally served on March 25, 2025, and Dener Ceide Productions, Inc. on March 26, 2025. When defendants failed to appear after being served, on September 18, 2025, the Court entered default judgment in favor of plaintiffs, enjoining defendants from using plaintiffs' trademark and awarding plaintiffs $1 million in statutory damages. On September 19, 2025, plaintiffs sent defendants an email informing them about the default judgment. On October 30, 2025, defendants brought the present motion to set aside the default judgment, arguing that the September 19, 2025, email was the first time that they had heard from plaintiffs. They seek to stay enforcement of the judgment pending determination of their motion to vacate. In the meantime, plaintiffs moved to hold defendants in contempt for violating the injunctive provisions of the final judgment.

## DISCUSSION

"Pursuant to Federal Rule of Civil Procedure 55(c), a district court may set aside the entry of a default 'for good cause,' and it may set aside a final default judgment under Rule 60(b)." Henry v. Oluwole, 108 F.4th 45, 52 (2d Cir. 2024). "In deciding whether to relieve a party from a default or a default judgment, a district court considers three factors: '(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented.'" Id. (citing Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 96 (2d Cir. 1993)). "Other relevant equitable factors may also be considered, for instance, whether the failure to follow a rule of procedure was a mistake made in good faith and

2

whether the entry of default would bring about a harsh or unfair result." Enron Oil, 10 F.3d at 96.

"The dispositions of motions for entries of defaults and default judgments and relief from the same under Rule 55(c) are left to the sound discretion of a district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties." Id. at 95. "[B]ecause defaults are generally disfavored and are reserved for rare occasions, when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." Henry, 108 F.4th at 51 (alteration in original) (quoting Enron Oil, 10 F.3d at 96). "[A]n understandable zeal for a tidy, reduced calendar of cases should not overcome a court's duty to do justice in the particular case." Enron Oil, 10 F.3d at 96.

## I. Willfulness

In considering a motion to set aside a default judgment, "[w]illfulness 'is the most significant factor' but is not dispositive." Henry, 108 F.4th at 52 (citing In re Orion HealthCorp, Inc., 95 F.4th 98, 104 n.4 (2d Cir. 2024)). The Second Circuit has interpreted "willfulness," in the context of a default, to mean conduct that is "more than merely negligent or careless." S.E.C. v. McNulty, 137 F.3d 732, 738 (2d Cir. 1998) (collecting cases). An attorney or litigant's conduct that is "egregious and not satisfactorily explained," is suggestive of willfulness. Id. For example, the Court has found willful default when an attorney or litigant failed to respond to a motion for summary judgment for "unexplained" reasons, failed to comply with scheduling orders for "flimsy" reasons, or failed to answer the complaint after defendants had "purposely evaded service for months." Id. at 738-39 (citing United States v. Cirami, 535 F.2d 736, 739 (2d

3

Cir. 1976); Chira v. Lockheed Aircraft Corp., 634 F.2d 664, 666 (2d Cir. 1980); Com. Bank of Kuwait v. Rafidain Bank, 15 F.3d 238, 243-44 (2d Cir. 1994)).

Defendants argue that their default was not willful, because as a touring musician who spends eighty percent of his time on the road, Mr. Ceide may have been touring with his band when plaintiffs effectuated service by mail. Defendants assert that Mr. Ceide has no manager and receives "large volumes of fan correspondence, solicitations, and unsolicited packages." Defendants also argue that Mr. Ceide does not recall being served with the summons and complaint, and that even if he had received those papers, he either did not read them, or did not understand their significance. Mr. Ceide contends that the first time he found out about the default was from plaintiffs' September 19, 2025, email with the default judgment and the Court's decision and order attached.

Plaintiffs counter that defendants had actual knowledge of the lawsuit because they sent defendants physical copies of all relevant filings to the corporate defendant's registered agent's address, and Mr. Ceide's residential address, and even served Mr. Ceide personally at his home. Additionally, plaintiffs argue that on September 20, 2024, they sent the Court's entire docket with all supporting papers (including the Complaint) to defendants using the same email address that defendants acknowledge provided them with notice of the default judgment.

Because defendants fail to adequately explain how they did not receive the summons and complaint after plaintiffs sent multiple copies to defendants' registered addresses and even after Mr. Ceide was personally served, the Court finds that defendants did, in fact, receive the summons and complaint. Even so, doubt exists whether Mr. Ceide opened the papers or understood their significance, given Mr. Ceide's status as a touring performer, as Mr. Ceide may well have overlooked or mistaken the summons and complaint for spam mail, fan mail, or

4

solicitation for legal services. Because doubt exists as to whether defendants' conduct was willful, the Court resolves that doubt in favor of the defaulting party. See Henry, 108 F.4th at 51.

Defendants' failure to read and understand the summons and complaint suggests defendants were negligent and careless in responding to plaintiffs' complaint. Such negligence falls short of the "egregious" and inexplicable conduct the Court requires for a finding of willfulness. See McNulty, 137 F.3d at 738.

## II. Prejudice

To establish prejudice, a court must look beyond mere delay. Henry, 108 F.4th at 52 (citing Davis v. Musler, 713 F.2d 907, 916 (2d Cir. 1983)). "Rather, it must be shown that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." Id. at 52-53.

Defendants argue that plaintiffs would not be prejudiced in any meaningful way if the Court sets aside the default judgment, because the only prejudice plaintiffs would suffer from is delay, and there is no danger of increased difficulty in discovery, such as fading witness memories, in this case. The Court agrees. Plaintiffs emphasize that they have litigated their case in good faith for more than a year, but do not explain how setting aside default judgment now would result in the "loss of evidence" or "create increased difficulties of discovery." Plaintiffs' only evidence of prejudice is that defendants' non-cooperation has provided "greater opportunity for fraud and collusion," because defendants have apparently filed three new "bogus" trademark applications with the USPTO and formed a new company under the name "ZAFEM LLC," even after defendants knew about the default judgment against them.

To the extent plaintiffs are concerned that setting aside the default judgment will provide defendants with the "ability to engage in further infringement," plaintiffs have their remedies, including opposing defendants' efforts in the USPTO or seeking preliminary injunctive relief. See generally Sunward Electronics, Inc. v. McDonald, 362 F.3d 17, 24-27 (2d Cir. 2004).

### III. Meritorious Defense

"In order to make a sufficient showing of a meritorious defense in connection with a motion to vacate a default judgment, the defendant need not establish his defense conclusively, but he must present evidence of facts that, if proven at trial, would constitute a complete defense." State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada, 374 F.3d 158, 167 (2d Cir. 2004) (quoting McNulty, 137 F.3d at 740). "Judging the merit of a defense for the purposes of a motion to vacate a default judgment pursuant to a more rigorous standard would be inappropriate." Id. at 167-68. Without establishing conclusively that defendants have a meritorious defense, the Court finds that defendants have sufficiently presented evidence of facts that, if proven at trial, would constitute a complete defense.

First, defendants assert the common law defense of prior use. "Neither application for nor registration of a mark at the federal level wipes out the prior non-registered, common law rights of others." Jackpocket, Inc. v. Lottomatrix NY LLC, 645 F. Supp. 3d 185, 230 (S.D.N.Y. 2022) (quoting 5 McCarthy on Trademarks § 26:53), aff'd, No. 23-12-cv, 2024 WL 1152520 (2d Cir. March 18, 2024). "Even if a mark has become incontestable, 'the senior user retains a right to use the mark in the geographic area wherein that user accrued common law rights superior to the registrant prior to the date of registration.'" Id. (quoting Dial-A-Mattress Operating Corp. v. Mattress Madness, Inc., 841 F. Supp. 1339, 1353 (E.D.N.Y. 1994)). "In order to maintain a prior use defense, the defendant must prove '(1) present rights in the mark; (2) acquired prior to the

6

date of registration; (3) continual use of the mark since that date; and (4) use prior to the registrant on the goods or services that are in issue.'" Id. at 230-31 (citing Pilates, Inc. v. Current Concepts, Inc., 120 F. Supp. 2d 286, 311 (S.D.N.Y. 2000)).

Defendants assert that Mr. Ceide founded the band "Zafem" in 2016, began performing and recording in 2017, released Zafem's first single and video in 2019, and that there is no evidence plaintiffs continuously used the mark "Zafem World Entertainment" in 2016 and 2017. Defendants further argue that they have consistently performed and distributed music under the name "Zafem," and that this shows that they possess present and continuing rights in the mark.

Defendants' second meritorious defense is that the band name "Zafem" will not likely cause confusion with plaintiffs' trademark. An essential element of a trademark infringement claim is that the defendant's use of its mark is likely to cause consumer confusion. Jackpocket, Inc., 645 F. Supp. 3d at 235 (citing Virgin Enters. Ltd. v. Nawab, 335 F.3d 141, 146 (2d Cir. 2003)). To determine whether a mark is likely to cause consumer confusion, courts in this Circuit consider the eight factors set forth in Polaroid Corp. v. Polarad Electronics Corp., 287 F.2d 492, 495 (2d Cir. 1961): "(1) the strength of the plaintiff's mark, (2) the degree of similarity between the two marks, (3) the proximity of the parties' areas of commerce, (4) the likelihood that the plaintiff will bridge the gap separating their areas of activity, (5) actual consumer confusion, (6) whether the defendant acted in bad faith or was otherwise reprehensible in adopting the mark, (7) the quality of the defendant's product, and (8) the sophistication of the relevant consumer group." Id.

Applying these factors, defendants argue that plaintiffs' "Zafem World Entertainment" mark is weak, because defendants' usage of "Zafem" has been continuous and prominent for nearly a decade in contrast to plaintiffs' comparatively minimal use; their usage of "Zafem" is

dissimilar to plaintiffs' because the word "Zafem" is inseparable from their band's distinct identity, while plaintiffs' use is in conjunction with the phrase "Zafem World Entertainment"; there is no evidence of actual confusion among concertgoers, promoters, or streaming audiences, and that the public consistently associates "Zafem" with defendants; their adoption and use of the name "Zafem" was in good faith and before plaintiffs' registration; the quality and authenticity of their music reduces any risk that consumers would confuse their music for plaintiffs'; and because the public has long-standing familiarity with their "Zafem" band, the likelihood of confusion is remote and implausible.

Defendants' third meritorious defense is that plaintiffs procured their trademark registration in bad faith. The doctrine of unclean hands "is recognized as a valid defense in an appropriate trademark infringement or unfair competition case." Jackpocket, Inc., 645 F. Supp. 3d at 276 (quoting Estee Lauder, Inc. v. Fragrance Counter, Inc., 189 F.R.D. 269, 272 (S.D.N.Y. 1999)). "The application of unclean hands is appropriate 'where the party applying for such relief is guilty of conduct involving fraud, deceit, unconscionability, or bad faith related to the matter at issue to the detriment of the other party.'" Id. (quoting William Penn Life Ins. Co. of New York v. Viscuso, 569 F. Supp. 2d 355, 362 (S.D.N.Y. 2008)).

Defendants argue that their band had already achieved widespread public recognition and commercial success well before plaintiffs' application for registration. Defendants suggest that plaintiffs' decision to register the mark "Zafem World Entertainment," despite this established public recognition, is evidence of plaintiffs' appropriation of defendants' established goodwill and reputation, and that plaintiffs may have made a material misrepresentation when they registered their mark, because a registrant is required to affirm that to the best of their knowledge, no other person has the right to use that mark in commerce.

8

Although the Court has some skepticism about defendants' lack of confusion defense, defendants have sufficiently alleged facts that, if proven at trial, would constitute a complete defense to plaintiffs' trademark infringement claim. Plaintiffs dispute the elements of defendants' meritorious defenses, but in a motion to set aside default judgment, defendants need not establish their defenses conclusively. See State St. Bank & Tr. Co., 374 F.3d at 167.

### IV. Conditions

It is well established that a court can impose conditions on a defendant in vacating a default. See Powerserve Int'l, Inc. v. Lavi, 239 F.3d 508, 515 (2d Cir. 2001) ("In determining whether to exercise its discretion to set aside a default . . . a district court has inherent power to impose a reasonable condition on the vacatur in order to avoid undue prejudice to the opposing party."). Most commonly, courts will require a defendant to reimburse the plaintiff for the attorneys' fees that the plaintiff has incurred in seeking a default. See, e.g., Richardson v. Nassau County, 184 F.R.D. 497, 503 (E.D.N.Y. 1999); cf. United States Fidelity and Guaranty Co. v. Petroleo Brasileiro S.A., 220 F.R.D. 404, 407 (S.D.N.Y. 2004) (conditioning the denial of a motion for a default judgment on payment of costs and attorneys' fees in bringing such motion).

An award of attorneys' fees and costs upon vacating an entry of default does not require a finding of willfulness on the part of the defaulting party. See RLS Assoc., LLC v. The United Bank of Kuwait PLC, No. 01-cv-1290, 2002 WL 122927, at *8 (S.D.N.Y. Jan. 29, 2002). Rather, the "power to impose a reasonable condition on the vacatur" allows the Court to balance any "undue prejudice" to the movant against this Circuit's "preference for resolving disputes on the merits." Powerserve Int'l, 239 F.3d at 514, 515. In addition, to the extent there is reason to

be concerned about a defendant's ability to pay a judgment, the Court may require the defendant to post a judgment bond. Id.

Both of those concerns are present here. Defendant Ceide may be a touring musician, but pop musicians in particular should certainly know the importance of "taking care of business." The papers here were served on him in multiple ways, including putting them in his hands. The Court has given him the benefit of the doubt that his default was not willful, but it was certainly negligent. There is no reason why plaintiffs should pay for defendants' neglect. The Court therefore directs defendants to reimburse plaintiffs for the reasonable attorneys' fees and costs in seeking entry of default, moving for default judgment, and opposing defendants' motion to vacate the default.

In addition, defendants' submissions in support of their motion to vacate, and to stay execution of the judgment pending a determination of the motion to vacate, raise a substantial question whether any judgment that plaintiffs might later obtain will be worth more than the value of the paper on which it is printed. In support of their motion to stay, they assert that although they have "developed a large and loyal fan base, the Defendants do not derive substantial income from these activities and are not readily able to post a bond in this case." Rather than convincing the Court to refrain from imposing a bond requirement, and considering that bond premiums are generally only 1%-10% of the amount bonded, this statement raises the possibility that a judgment may be uncollectible.

On the other hand, by seeking solely statutory damages, plaintiffs have not convinced the Court that their business is at substantial risk of loss pending the litigation, or that the measure of statutory damages awarded in defendants' absence will be appropriate in the non-default context.

Under these circumstances, the Court directs defendants to post a bond in the amount of $100,000 as a condition for vacating the default judgment. Defendants may seek to have that amount reduced upon a full showing of their financial situation, and plaintiffs may seek to have it increased upon a full showing of its risk of uncollectibility of a judgment, which the Court recognizes may require discovery.

## CONCLUSION

For the foregoing reasons, defendants' motion to set aside the default judgment is granted, subject to the conditions that defendants pay plaintiffs' reasonable attorneys' fees and costs incurred from moving for default judgment and opposing the present motion to vacate, and that defendants post a judgment bond in the amount of $100,000 within seven days. The parties are directed to attempt to stipulate to the amount of attorneys' fees and costs as described above. Should the parties fail to stipulate, plaintiffs may move the Court to fix the amount within 14 days of this Order. Plaintiffs are cautioned that an overly aggressive approach in seeking attorneys' fees may lead to a material reduction of the amount requested.

Both vacatur and enforcement are stayed pending satisfaction of these conditions, and the hearing on plaintiffs' motion for contempt is continued *sine die*.

**SO ORDERED.**

*Brian M. Cogan*
U.S.D.J.

Dated: Brooklyn, New York
November 14, 2025